[Cite as *Cleveland v. Cunningham*, 2011-Ohio-2276.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 95267

## CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

## ANTONIO D. CUNNINGHAM

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2009 CRB 045579

**BEFORE:** Boyle, P.J., Jones, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** May 12, 2011

**ATTORNEYS FOR APPELLANT**

James R. Willis
Myron P. Watson
420 Lakeside Place
323 W. Lakeside Avenue
Cleveland, Ohio   44113-1009


**ATTORNEYS FOR APPELLEE**

Victor R. Perez
Chief City Prosecutor
Aric Kinast
Assistant City Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio   44113




MARY J. BOYLE, P.J.:

{¶ 1}   Defendant-appellant, Antonio Cunningham, appeals from a judgment of the

Cleveland Municipal Court denying his motion to suppress evidence and his request for

the return of seized property, raising five assignments of error.   We affirm.

<u>Procedural History and Facts</u>

{¶ 2}   On December 23, 2009, Cunningham was arrested for aggravated

menacing, a violation of Cleveland Codified Ordinances ("C.C.O.") 621.06, a first degree

misdemeanor, and drug abuse, a violation of C.C.O. 607.03, a minor misdemeanor. Upon arraignment, Cunningham pleaded not guilty to the charges and moved to suppress the evidence and statements that he made in connection with his arrest. Cunningham also filed a motion requesting return of the property seized from his vehicle, namely, approximately $17,000. The trial court held a suppression hearing and ultimately denied the motion to suppress, finding that "there is probable cause for the officer to arrest Cunningham for aggravated menacing." The trial court further denied the request for the return of seized property, finding that it no longer had jurisdiction because a federal agency had since seized the property.

{¶ 3} The matter proceeded to a jury trial on the aggravated menacing count, where the jury found him not guilty. The trial court subsequently found him guilty of the drug abuse count.

{¶ 4} Cunningham timely appealed. After Cunningham filed his appellate brief, appellee, the city of Cleveland, moved to dismiss his assignments of error relating to the trial court's alleged error in failing to order the return of his seized property, namely, approximately $17,000 in cash seized from Cunningham's vehicle, as being moot. The City indicated that following the suppression hearing, Cunningham had filed a replevin action in common pleas court for the return of the property, which was subsequently removed to federal court. At the time of this appeal, the matter was currently pending. The City also attached a certified copy of a complaint in forfeiture filed on June 30, 2010

by the United States Attorney for the Northern District of Ohio, seeking forfeiture of the money the Cleveland police seized in connection with Cunningham's arrest on December 23, 2009. We granted the motion to dismiss. Therefore, the only issue before us on appeal is whether the trial court properly denied Cunningham's motion to suppress.

{¶ 5} The following evidence was presented at the suppression hearing.

{¶ 6} Cleveland police officer James Dunn testified that on December 23, 2009, around 1:15 p.m., while off-duty and prior to his shift, he was traveling eastbound on I-90 when he observed a vehicle driving erratically, which was later determined to be operated by Cunningham. Officer Dunn was traveling in the fast lane and maintained his lane, preventing Cunningham from passing him. According to Officer Dunn, Cunningham then "started making gestures toward [him], put his hands up in the air like why aren't I getting out of the way." Dunn further testified that Cunningham then started to swerve toward Dunn's vehicle, at which point Dunn got over in the right lane. Cunningham then pulled next to Dunn's vehicle, continuing with the hand gestures and then rolled down his window, pointing a handgun at Dunn, who at this point had also cracked his own window. In response, Dunn immediately slowed his vehicle, got Cunningham's license plate number, and exited onto Superior Avenue. Dunn then called police officers Sauterer and Taylor, who were working the day shift, and relayed to them what happened, providing Cunningham's license plate number along with a description of the vehicle and the occupants.

**{¶ 7}** Officer Robert Sauterer testified that he received the call from Officer Dunn, informing him that a male had just pulled a gun on him while driving on I-90, indicating that "it seemed like it was a type of road rage." Officer Sauterer and his partner, Officer Taylor, eventually came upon the vehicle parked in the convenience store lot on East 140th Street. Believing the driver to be armed, Officer Sauterer and his partner approached the vehicle with their guns drawn. Officer Sauterer found Cunningham, who matched the description provided by Officer Dunn, sitting in the vehicle alone. He immediately pulled Cunningham out of the vehicle and told him that he was under arrest. He then asked Cunningham if he had any weapons in the vehicle or other illegal contraband, which Cunningham admitted to having marijuana in the center console. Cunningham and the front passenger, who was apprehended inside the convenience store and later identified as Jeron Cantney (Cunningham's cousin), were placed in the police vehicle. Sauterer then performed an inventory of the vehicle and discovered a blue grocery bag full of money.

**{¶ 8}** Contrary to the City's position, Cunningham testified that he neither had a gun nor did he wave any gun at Dunn. According to Cunningham, he was driving east on I-90 approaching "dead man's curve," when he noticed out of his left-hand mirror a black truck coming from the fast lane behind him. The driver of the black truck "sat there for a second," then abruptly came up on the right-side of Cunningham's vehicle, "saying something." As to what transpired next, Cunningham testified as follows: "I

rolled down my window to see what [he] was saying. [The driver] was shaking his head, I thought it was road rage so I stuck up my middle finger at him and kept driving, rolled up my window. So [the driver] slowed, got back behind me, got my license plate number and got off at the next exit." Cunningham further explained that he and his cousin, who was in the front seat, next stopped at a convenience store at East 140th Street and St. Clair Avenue, where he was almost immediately apprehended by police in the parking lot. He testified that two police officers approached him with their guns and tasers drawn and ordered him out of his car.

{¶ 9} Cunningham further testified that although the officers searched the car, they did not find a gun. The officers did find marijuana in the car, which Cunningham testified belonged to his cousin.

{¶ 10} Cantney also testified in support of Cunningham's motion to suppress. According to Cantney, on the day of the incident, Cunningham had called him earlier in the morning and asked if he was interested in viewing some properties and going car shopping. Cantney testified that immediately upon getting into Cunningham's car, he "threw a sack of marijuana in the middle console." Cantney corroborated Cunningham's testimony as to what happened on 1-90 with the black truck, also believing the incident to be a matter of road rage by the driver of the black truck. He further testified that Cunningham did not have a gun on him, that Cunningham has never even owned a gun, and denied that he was ever counting money in the vehicle. Cantney admitted on

cross-examination that he had told the officers at the time of the arrest that he "just got out of jail for drug trafficking, possession of cocaine and a few other felonies, CCW, a firearm, failure to comply."

{¶ 11} We now turn to the merits of Cunningham's appeal, challenging the trial court's denial of his motion to suppress.

## Standard of Review

{¶ 12} A motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. * * * Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Internal citations omitted.) Id.

{¶ 13} Cunningham first argues that the police did not have probable cause to arrest him.

*Probable Cause for Warrantless Arrest*

{¶ 14} The Fourth Amendment to the United States Constitution, made applicable to the states by its incorporation into the Fourteenth Amendment, provides that people are

"to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * * and no Warrants shall issue, but upon probable cause * * *."

{¶ 15} "An arrest without a warrant is constitutionally invalid unless the arresting officer had probable cause to make the arrest." *State v. Werber*, 8th Dist. No. 93716, 2010-Ohio-4883, ¶36. The test for probable cause to justify an arrest is "whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Beck v. Ohio* (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142. Whether a Fourth Amendment violation has occurred "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time." *Scott v. United States* (1978), 436 U.S. 128, 136, 98 S.Ct. 1717, 56 L.Ed.2d 168.

{¶ 16} Probable cause requires more than a generalized suspicion of criminal conduct, although less certainty than proof beyond a reasonable doubt. *Werber* at ¶37. Probable cause must exist at the time of the arrest; it cannot be established later by evidence gathered from the suspect after his illegal arrest. *Beck*, supra.

{¶ 17} The record reveals that Officer Sauterer arrested Cunningham based on the information provided by Officer Dunn. This is not a situation of the police responding to a call of an anonymous person with an anonymous tip. Instead, Officer Sauterer was responding with information provided by another police officer, albeit, off-duty, who had

reported a crime. Officer Sauterer discovered Cunningham's vehicle close in time to the reported incident and in the area where Officer Dunn stated that the vehicle was headed. Based on the information provided to Officer Sauterer, we find competent, credible evidence to support the trial court's conclusion that Officer Sauterer had probable cause to arrest Cunningham.

{¶ 18} To the extent that Cunningham denied ever waving a gun at Officer Dunn, thereby contradicting Officer Dunn's testimony, the trial court obviously found Officer Dunn's testimony more credible.

*Search of the Vehicle*

{¶ 19} Cunningham contends that, even if the police had probable cause to arrest, there were no exigent circumstances to justify the search of his vehicle following his arrest. Relying on the United States Supreme Court's decision in *Arizona v. Gant* (2009), 556 U.S. ___, 129 S.Ct. 1710, 173 L.Ed.2d 485, Cunningham argues that the search of his vehicle was no longer necessary or justified once he was in the police's vehicle. We find his argument unpersuasive. In *Gant*, the Supreme Court held that a search of a vehicle incident to an arrest violates the Fourth Amendment unless "the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of the arrest." Id. at 1723. Here, Cunningham was arrested for aggravated menacing, which involved the use of a firearm. Based on the information provided by Officer Dunn, and

given that Officer Sauterer did not find a gun on Cunningham, it was reasonable for Officer Sauterer to believe that the gun was inside the vehicle. Therefore, under *Gant*, the search of the vehicle did not violate the Fourth Amendment.

{¶ 20} We further note that the "inventory search" exception to the warrant requirement of the Fourth Amendment was left unaffected by *Gant*. An inventory search of a lawfully impounded vehicle does not contravene the Fourth Amendment to the United States Constitution when the search is administered in good faith and in accordance with reasonable police procedures or established routine. *State v. Mesa*, 87 Ohio St.3d 105, 1999-Ohio-253, 717 N.E.2d 329. The record reveals that Cunningham's vehicle was being towed incident to his arrest and that Officer Sauterer searched the vehicle as part of an inventory search. We therefore cannot say that the police violated Cunningham's Fourth Amendment rights in searching the vehicle.

*Statement Regarding the Marijuana*

{¶ 21} Cunningham further argues that his statement as to marijuana being in the vehicle should have been suppressed because he was never Mirandized. But Cunningham never raised this argument below in the trial court and therefore will not be reviewed here. See *State v. Lucious*, 8th Dist. No. 92196, 2009-Ohio-4880, ¶15 (defendant's failure to raise *Miranda* argument in the trial court below precluded further review on appeal).

{¶ 22} Accordingly, Cunningham's assignments of error challenging the trial court's denial of his motion to suppress are overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

MARY J. BOYLE, PRESIDING JUDGE

LARRY A. JONES, J., CONCURS;
EILEEN A. GALLAGHER, J., CONCURS IN JUDGMENT ONLY
WITH SEPARATE OPINION
EILEEN A. GALLAGHER, J., CONCURRING IN JUDGMENT ONLY:

{¶ 23} While I disagree with portions of the majority analysis, I agree with the outcome of the case, albeit for different reasons. In conjunction with this court's opinion in *City of Mayfield Hts. v. Demetrius Harris*, Cuyahoga App. No. 95601, 2011-Ohio-1943, I must note my concern surrounding the Cleveland Police Department's

improper seizure and immediate transfer of Cunningham's $16,757 to the federal government.

{¶ 24} Cleveland Police Officers arrested Cunningham on December 23, 2009 for aggravated menacing and drug abuse. At the time of his arrest, officers seized $16,757 from the glove compartment of his vehicle. When questioned about the funds, Cunningham stated that he was a landscaper and snow remover, that he knew how to save money, and that his girlfriend frequently provided him with cash. The arresting officer, Robert Sauterer, was not satisfied with Cunningham's response and testified that he believed the large sum of money could possibly be subject to federal civil forfeiture.

{¶ 25} Officer Sauterer contacted Officer James Cudo, a member of the Vice and Narcotics Unit of the Cleveland Police Department and a *self-described* expert on civil forfeitures to the federal government. After arriving on the scene, Officer Cudo acted of his own accord and determined that the $16,757 was going to be subjected to a federal civil forfeiture. Officer Cudo then executed a Request for Adoption of Forfeiture form and on December 30, 2009, the Immigration and Customs Enforcement Agency, a branch of the U.S. Government's Department of Homeland Security, took exclusive possession of the $16,757. The matter was then assigned to the Fines, Penalties & Forfeiture Section of the U.S. Customs and Border Protection, FP&F Case No. 2010410100001601.

{¶ 26} On January 11, 2010, the U.S. Customs and Border Protection sent a certified letter notifying Cunningham of the seizure and of his right to institute judicial

forfeiture proceedings in federal court.[1] On April 3, 2010, Cunningham submitted a claim to the Customs and Border Protection for the $16,757 and on May 24, 2010, filed the Civil Asset Forfeiture Reform Act of 2000 (CAFRA) Election of Proceedings form. On June 30, 2010, the United States Attorney for the Northern District of Ohio filed a complaint in forfeiture against Cunningham in the amount of $16,757 in the United States District Court for the Northern District of Ohio, Eastern Division.

{¶ 27} Simultaneous to the above proceedings, Cunningham also sought the return of the seized monies in both the municipal and common pleas courts. On January 4th, he requested the immediate return of the seized monies in Cleveland Municipal Court. On February 8, 2010, Cunningham also filed a complaint in replevin in Cuyahoga County Common Pleas Court, seeking the return of his monies. On February 16, 2010, the Cleveland Municipal Court denied Cunningham's motion for return of the seized monies, stating that as the federal government had taken possession of the funds, the court was without jurisdiction to hear his claim. Cunningham appealed. On March 4, 2010, the city of Cleveland filed a notice of removal of Cunningham's replevin action to federal court.

{¶ 28} While I acknowledge that Cunningham is actively pursuing relief using the procedures to challenge the federal forfeiture as contained within CAFRA, I find the manner in which the federal government became involved in this matter disturbing.

---

[1] The letter was sent to Cunningham's correct address, however, the certified letter was

{¶ **29**} It is becoming readily apparent that when police officers seize large sums of money, they are circumventing the state forfeiture statute by preemptively turning over the seized monies to federal authorities. These entities are then disclaiming any responsibility over these funds simply stating that because the federal government possesses the funds at issue, "we are without jurisdiction to hear the matter." As stated in *Harris:*

{¶ **30**} "The State's arguments that they do not have the seized property are disingenuous. The State, by acting as a conduit from the owner or possessor of the property to the United States of America is entitled, upon forfeiture, to the return of a substantial amount of the monies seized. Accordingly, the State has a genuine pecuniary interest in any seized property. The artificiality of their specious claims that since they no longer are in possession of the seized property, they cannot be held accountable in replevin can be viewed as an attempt by the State to knowingly circumvent the replevin statutes. The State levies a preposterous argument. For example, if a thief places stolen property in the home of a third person, should he not be held accountable for its return when the whereabouts of the property are discovered? The mere deposit of currency in a repository operated by the United States government does not obviate the obvious, the depositor has rights to that which has been deposited." Id.

---

returned by the U.S. Postal Service as unclaimed on or about February 8, 2010.

{¶ 31} Moreover, this transfer of funds to the federal government is being accomplished, as evidenced above, without any approval by either a senior officer, the City's law director, or the City's prosecutor. It appears from the record of cases before this court, that any police officer who seizes large sums of money can take it upon himself or herself to request federal adoption of those funds. This is notwithstanding the legal analysis required to determine whether the funds were seized lawfully. Specifically, Section 981(b)(2), Title 18, U.S. Code, outlines three options for seizures, the most commonly used of which states: "(C) the property was lawfully seized by a State or local law enforcement agency and transferred to a Federal agency."

{¶ 32} In the present case, Officer Sauterer testified that he searched Cunningham's vehicle as an inventory search to safeguard any of Cunningham's property. It was during this search that Officer Sauterer discovered the nearly $17,000. Without any approval from his senior officer, or anyone with any legal education, Officer Sauterer immediately believed the money would be subject to civil forfeiture. Officer Sauterer contacted Officer Cudo, who confirmed his belief. The officers then issued Cunningham a receipt for the funds, which stated that the funds were being seized as evidence. The basis for how these funds were "lawfully seized" is unclear, and we can only assume that it was based on the officers' belief of criminal activity.

{¶ 33} It is equally incredulous to note that the officer performing the seizure is the same officer determining the legality of the seizure. That officer is acting as judge and

jury as to whether the funds were seized lawfully. Pride and procedure dictates that any given officer will believe that their own seizure of property was done "lawfully." Moreover, when you take into consideration the financial incentive local law enforcement agencies have to transfer seized money to the federal government, the regularity with which this is occurring becomes alarming.

{¶ 34} The United States Attorney's Manual Chapter 9-116.110 specifically forbids a federal agency from adopting a seizure while the property remains subject to the jurisdiction of a state court. Regrettably, Cunningham's pursuit of his claim to the monies in federal court ties this court's hands in this case; see *State ex rel. Chandler v. Butler* (1991), 61 Ohio St.3d 592, 575 N.E.2d 833. Nonetheless, I am disturbed, to say the least, about the legal maneuvering used by local law enforcement. As stated in *State v. Scott* (Mar. 22, 2000), Mahoning App. No. 98 CA 174:

> "This Court notes that * * * the trial judge expressed serious misgivings concerning the legal loophole which effectively allows local law enforcement authorities to completely circumvent the procedural safeguards contained in the state forfeiture statute. This is accomplished by merely turning the seized property over to federal authorities pursuant to federal statute which does not require a defendant's conviction as a condition precedent to forfeiture proceedings. The trial court's misgivings are highlighted by the fact that there is an apparent financial incentive for a local police department to seek the implementation of federal forfeiture proceedings as opposed to its state law counterpart. The cumulative effect of this practice is to reduce Ohio's forfeiture statute to a functional nullity."

See, also, *State v. Primm*, Cuyahoga App. No. 94630, 2011-Ohio-328.

{¶ 35} Accordingly, based on the foregoing, I concur in judgment only.