[Cite as *State v. Bandarapalli*, 2011-Ohio-6158.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96319**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RAJPAL BANDARAPALLI

DEFENDANT-APPELLANT

**JUDGMENT:**
**AFFIRMED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-533200

**BEFORE:** Sweeney, J., Celebrezze, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** December 1, 2011

**FOR APPELLANT**

Rajpal Bandarapalli, Pro Se
17963 Walnut Drive
Strongsville, Ohio 44149

**ATTORNEYS FOR APPELLEE**

William D. Mason, Esq.
Cuyahoga County Prosecutor
By: Brian S. Deckert, Esq.
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

JAMES J. SWEENEY, J.:

{¶ 1} Defendant-appellant Rajpal Bandarapalli ("defendant"), appeals his convictions for promoting prostitution and possessing criminal tools. After reviewing the facts of the case and pertinent law, we affirm.

{¶ 2} On January 14, 2010, the Westlake Police Department conducted a sting operation that included suspected prostitution stemming from the website "WestlakeEscorts.com." The website's internet provider address was registered to defendant's residence in Fairview Park, and defendant was one of the targets in the investigation. An undercover police officer called the phone number listed on the website and arranged to meet a woman at a hotel. The hotel room was set up with audio and video surveillance equipment. When the woman arrived at the hotel, she negotiated

to have sex with the undercover officer for $200. The police arrested the woman for prostitution, and she agreed to cooperate with the investigation.

{¶ 3} The woman told police that defendant operated the escort service and she worked for him. Per police request, she made arrangements with defendant to bring a second woman to the hotel that night. Police officers followed defendant from his house as he picked up another woman and drove her to the hotel. Defendant waited in the parking lot as the second woman met with the undercover officer and agreed to have sex with him for $300. The woman exited the hotel, went back to defendant in the parking lot, and gave him half the money. Defendant left the hotel and police stopped his vehicle and arrested him shortly after. Defendant's laptop computer, cell phone, and $150 of the sting operation buy money were found on defendant's person and in his car. These items, along with defendant's vehicle, were confiscated.

{¶ 4} On January 27, 2010, defendant was indicted for one count of promoting prostitution in violation of R.C. 2907.22(A)(2), two counts of promoting prostitution in violation of R.C. 2907.22(A)(4), and one count of possessing criminal tools in violation of R.C. 2923.24(A). A jury found defendant guilty of all counts, and on January 5, 2011, the court sentenced him to six months in prison for each offense, to run concurrently, and ordered forfeiture of defendant's car, cell phone, and laptop computer.

{¶ 5} Defendant appeals pro se and raises 12 assignments of error, which will be reviewed out of order when applicable. We note that "'an appellate court will ordinarily indulge a pro se litigant where there is some semblance of compliance with the appellate

rules.' However, pro se litigants are presumed to have knowledge of the law and legal procedures and are held to the same standards as litigants who are represented by counsel.'" *Thomas McGuire Bail Bond Co. v. Hairston*, Cuyahoga App. No. 89307, 2007-Ohio-6648, at ¶6, quoting *Delaney v. Cuyahoga Metro. Housing Auth.* (July 7, 1994), Cuyahoga App. No. 65714.

{¶ 6} "VI. The trial court erred in denying the appellant's motion to supress evidence."

{¶ 7} Defendant raises four arguments under this assignment of error: there was no probable cause for his arrest; the search of his vehicle was unlawful; there was no probable cause to issue a search warrant for his residence; and the search of defendant's computers was conducted under an expired warrant.

{¶ 8} "Appellate review of a trial court's ruling on a motion to suppress presents mixed questions of law and fact. An appellate court is to accept the trial court's factual findings unless they are clearly erroneous. We are therefore required to accept the factual determinations of a trial court if they are supported by competent and credible evidence. The application of the law to those facts, however, is subject to de novo review." *State v. Polk*, Cuyahoga App. No. 84361, 2005-Ohio-774, ¶2.

{¶ 9} Warrantless searches are presumptively unconstitutional, subject to a limited number of specific exceptions. A valid warrantless arrest is based on probable cause — whether "the facts and circumstances within the officer's knowledge were sufficient to

cause a prudent person to believe that the individual had committed or was committing an offense." *State v. Johnson*, Cuyahoga App. No. 84282, 2005-Ohio-98, ¶13.

{¶ 10} Defendant was arrested for promoting prostitution in violation of R.C. 2907.22(A), which states in pertinent part that "[n]o person shall knowingly * * * [s]upervise, manage, or control the activities of a prostitute in engaging in sexual activity for hire; * * * [or] induce or procure another to engage in sexual activity for hire."

{¶ 11} In the instant case, the police had information that linked defendant, his home address, and his cellular phone number to the website under investigation. The women who were arrested for soliciting prostitution implicated defendant, stating that he directed and scheduled the "dates," provided transportation for the women, and collected half the money received from the "johns." There is audiotape of telephone conversations between one of the women and defendant arranging another "date." There is videotape of both women soliciting sex in exchange for money from an undercover officer. Additionally, the police followed defendant as he brought the second woman to the motel and waited for her to bring him his share of the money.

{¶ 12} In denying defendant's motion to suppress, the court found that based on the officers' first-hand knowledge of the investigation, including the sting operation, the police had a reasonable suspicion that defendant was involved in illegal prostitution. We find that probable cause for defendant's arrest is supported by competent, credible evidence in the record.

{¶ 13} Defendant next argues that the search of his vehicle was unlawful under *Arizona v. Gant* (2009), 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485. However, our review of the record shows that *Gant* does not apply to the instant case. This court has held that a properly conducted inventory search of a vehicle is left unaffected by *Gant*. See, e.g., *Cleveland v. Cunningham*, Cuyahoga App. No. 95267, 2011-Ohio-2276. The officers involved in the investigation testified that after defendant's arrest, his car was inventoried and towed, per department policies. Defendant's laptop was seized as a result of the inventory.[1] The purpose of this was to "safeguard any of [defendant's] belongings or * * * property" found in his car. Therefore, we find that the search of defendant's vehicle was lawful.

{¶ 14} Defendant next challenges the search of his house and his computers. Two search warrants were signed and executed in this case. The first was for defendant's residence, which resulted in the discovery of a second laptop computer. The affidavit attached to this warrant contained information from the officers who conducted the sting operation. We find that this information amounted to "a fair probability that contraband or evidence of a crime will be found" at defendant's residence. *State v. George* (1989), 45 Ohio St.3d 325, 329, 544 N.E.2d 640.

{¶ 15} The second search warrant was for a forensic examination of defendant's two laptops, which had been lawfully seized and were in police custody at the time the

---

[1]The buy money and defendant's cell phone were also seized, but these items were found in defendant's pockets and were taken incident to his arrest.

warrant was signed. This warrant authorized an off-premises content analysis of the computers, as evidenced by paragraph 25 of the affidavit: "Due to possible technical limitations of the Westlake Police Department Computer Forensic Lab, additional technical assistance may be conducted by the Federal Bureau of Investigation and/or the Ohio Bureau of Criminal Identification and Investigation." See, also, *State v. Steele* (June 26, 1980), Cuyahoga App. No. 40603 (holding that "[n]othing within the language of the Fourth Amendment precludes the police from retaining custody over and analyzing seized evidence so long as the seizure was constitutionally permissible at its inception"), citing *United States v. Edwards* (1974), 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771.

{¶ 16} Westlake Police Department Detective Timothy Tolaro testified as an expert witness in the field of computer forensics. He examined the two laptops involved in this case. One of them belonged to Diebold, which was defendant's employer at the time. Det. Tolaro had to work in conjunction with Diebold to access the computer's hard drive because it was encrypted. The results of Det. Tolaro's analysis showed that defendant logged in as administrator of WestlakeEscorts.com from both laptops, where he created and altered the web page by doing things such as uploading photographs and providing descriptions of the female escorts. We find that the forensic examination of defendant's computers was properly executed.

{¶ 17} Accordingly, we find that the court did not err when it denied defendant's motion to suppress and his sixth assignment of error is overruled.

{¶ 18} In defendant's first assignment of error, he argues as follows:

{¶ 19} "I. The appellant's convictions are not supported by sufficient evidence, and are against the manifest weight of evidence, in violation of defendant's right to due process of law."

{¶ 20} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶ 21} To warrant reversal of a verdict under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. Id.

{¶ 22} Defendant was convicted of one count of promoting prostitution in violation of R.C. 2907.22(A)(2), which states that "[n]o person shall knowingly * * * [s]upervise, manage, or control the activities of a prostitute in engaging in sexual activity for hire"; two counts of promoting prostitution in violation of R.C. 2907.22(A)(4), which states that "[n]o person shall knowingly * * * induce or procure another to engage in sexual activity for hire"; and one count of possessing criminal tools in violation of R.C. 2923.24(A),

which states that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."

**{¶ 23}** The following evidence was presented at defendant's trial:

**{¶ 24}** Forensic computer evidence linked the domain name and internet provider address for WestlakeEscorts.com to defendant. Westlake Police Detective Robert Toth testified that he was involved in the sting operation that took place on January 14, 2010. After the authorities took the first woman into custody for prostitution, she agreed to cooperate with the investigation. Det. Toth instructed her to call her pimp for another girl and the woman called defendant. The police followed defendant from his apartment to the west side of Cleveland, where he picked up the second woman. Defendant drove this woman to the hotel where the sting operation was being conducted. The woman went inside the hotel and negotiated an exchange of cash for sex, which was recorded on video surveillance equipment.

**{¶ 25}** The woman came out to talk to defendant in his car, then went back into the motel. The police followed defendant as he left the motel and arrested him shortly after. The police found $150 of the undercover officer's buy money in defendant's pocket.

**{¶ 26}** Both women testified that defendant persuaded them to become a part of his escort business. Defendant would set up and drive them to the dates. They testified that the arrangement was that defendant would take half of the money they got from each john, plus gas money for driving them to the location.

{¶ 27} The first woman testified that being an escort involved "performing sexual acts and requests." She prostituted for defendant approximately six or seven times. The woman testified that on January 14, 2010, she did not tell defendant about a scheduled date and her plan was to keep all the money. However, that same day she called defendant and arranged a requested date for a second escort.

{¶ 28} The second woman testified that at first, the dates involved fetishes. However, at some point things changed, and she and defendant discussed about her having sex with people for money: "I didn't want to have any sexual encounters with people, and [defendant] told me that I needed to open up sexually, and if I did, and tried different things, that I would get more business and make more money." On January 14, 2010, defendant picked her up and drove her to Westlake for a "date." She collected $300 from the undercover officer and gave $150 to defendant.

{¶ 29} Although somewhat unclear from his brief, it seems that defendant argues that he was improperly convicted because he was not in Westlake at the time of the offense. However, nothing in R.C. 2907.22 requires a defendant who is found guilty of promoting prostitution to be present at the scene of the solicitation. Upon review, we find sufficient evidence to support defendant's convictions for promoting prostitution and possessing criminal tools. Furthermore, we cannot say that defendant's convictions are against the manifest weight of the evidence.

{¶ 30} "II. Forfeiture of Appellant's vehicle, phone and computers are contrary to law under R.C. 2981.02."

{¶ 31} Defendant relies on *State v. Jelenic*, Medina App. No. 10CA0024-M, 2010-Ohio-6056, to support this argument. Upon review, however, we find that *Jelenic's* narrow holding is inapplicable to the case at hand. In *Jelenic*, the court held that the offender's vehicle was not subject to forfeiture, because he merely used it to drive to the location where he committed the offense of drug trafficking. Id. See, also, R.C. 2941.147; 2981.02; 2981.04. In theory, this offense could have been committed regardless of how the defendant arrived at the scene.

{¶ 32} In the instant case, defendant used his vehicle, while committing the offense, to transport one of his prostitutes to a "date" with an undercover police officer. We find that, under these facts, defendant's vehicle was an "instrumentality * * * used in * * * the commission * * * of the [offense] * * * sufficient to warrant forfeiture * * *." Furthermore, we decline to apply *Jelenic* to the forfeiture of defendant's computers and phone, and defendant cites to no other authority to support this assignment of error. Thus, defendant's second assignment of error is overruled.

{¶ 33} III. "Trial court erred by denying motion to dismiss on defective indictment and lack of proper bill of particular grounds."

{¶ 34} "Under the law-of-the-case doctrine, the 'decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.'" (Internal citations and emphasis omitted.) *State ex rel. Baker v. Personnel Bd. of Rev.* (1999), 85 Ohio St.3d 640, 642, 710 N.E.2d 706.

**{¶ 35}** Defendant is precluded from relitigating this issue because this court previously ruled that the indictment in the instant case is not defective. *State, ex rel. Bandarapalli v. Gallagher*, Cuyahoga App. No. 95506, 2010-Ohio-3886 (holding that the four counts in the indictment against defendant included "the specific language as contained within" the promoting prostitution and possessing criminal tools statutes, as well as information "that the charged offenses occurred within Cuyahoga County" on January 14, 2010).

**{¶ 36}** Defendant's third assignment of error is overruled.

**{¶ 37}** "IV.  The trial court erred by denying the motion to dismiss for failure to preserve exculpatory and potentially useful evidence."

**{¶ 38}** The state must disclose material evidence favorable to a criminal defendant. *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.   In the instant case, defendant filed a motion for the state to preserve six evidentiary items, including various video and audio recordings and an advertisement.  This motion was granted insomuch as the state agreed to "preserve any and all evidence" that it had.   According to the record, the state provided defendant with the requested advertisement and alleged that the requested recordings did not exist.

**{¶ 39}** Defendant subsequently filed a motion to dismiss based on failure to preserve exculpatory evidence.  The court denied this motion and stated the following: "However, as the State of Ohio has noted, when there isn't evidence to preserve, that evidence cannot be preserved.   And as an officer of the court, I have to take [the state's]

word, and on countless occasions, on the record, [the state] has proven to this Court that what you're requesting, and it's the same requests, the same items, [the state] has stated and proven that these items don't exist."   Furthermore, the court noted that defendant would have the opportunity to cross-examine the police officers and the two women involved in the investigation of prostitution regarding the evidentiary items in question.

{¶ 40} Accordingly, we find no error in the court's denial of defendant's motion to dismiss, and his fourth assignment of error is overruled.

{¶ 41} "V.   Appellant was denied speedy trial rights due the unreasonable delay by State to respond to the discovery request."

{¶ 42} When an appellate court reviews an allegation of a speedy trial violation, it "should apply a de novo standard of review to the legal issues but afford great deference to any findings of fact made by the trial court." *State v. Barnes*, Cuyahoga App. No. 90847, 2008-Ohio-5472, ¶17.

{¶ 43} R.C. 2945.71(C)(2) requires the state to bring a defendant accused of committing a felony to trial within 270 days after his arrest. "[E]ach day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."  R.C. 2945.71(E).   However, various events toll speedy trial days, including for example, periods "during which [a defendant's] mental competence to stand trial is being determined," defense requested continuances, and requests for discovery. R.C. 2945.72(B), (E), and (H).

**{¶ 44}** In the instant case, defendant was arrested and jailed on January 14, 2010; he posted bond and was released from jail on January 26, 2010; and his trial began on December 2, 2010. Using the triple count provision for the first 12 days, a total of 345 speedy trial days passed. However, defendant filed more than 70 motions, essentially tolling the speedy trial time in its entirety, including the following: January 21 and 22, March 11, April 5 and 14, May 13, June 1 and 21 — motions for discovery; February 12 and 19, April 2 and 22, May 3 and 17, August 16, September 13, October 25, November 8, 15, and 22 — motions for continuance; February 22, March 13, April 2, November 24, December 2 — motions to suppress; and March 13, April 2, April 26, June 24, July 9, November 23 — motions to dismiss. Additionally, on May 18, 2010, the court ordered a continuance to July 15, 2010, and referred defendant for a psychiatric evaluation, and on July 6, 2010, the court denied defendant's motion to dismiss for speedy trial violations, finding that the speedy trial time had not run.

**{¶ 45}** Given the extent of tolling events in the case at hand, we find no violation of defendant's speedy trial rights, and his fifth assignment of error is overruled.

**{¶ 46}** "VII. The trial court abused its discretion by admitting other-acts into evidence in violation of Ohio Rules of Evidence 403 and 404."

**{¶ 47}** Pursuant to Evid.R. 404(B), "[e]vidence of other * * * acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶ 48} In his case-in-chief, defendant testified that his involvement in WestlakeEscorts.com was limited to administration of the website, and he did not keep track of what the escorts did. According to defendant, he believed escort services provided "adult modeling," and he denied receiving money from the escorts for these services. Defendant testified that when he dropped the second woman off at the hotel on January 14, 2010, she gave him the money because she was afraid she would lose it. Defendant denied knowledge of any sexual activity regarding the website and escorts.

{¶ 49} On cross-examination, the state elicited testimony from defendant showing his knowledge of the connection between escort services and prostitution. He had a three-year relationship with a woman who was an escort/prostitute. Additionally, he admitted to placing multiple internet advertisements seeking women "who can provide me company for couple of hours, three, four times a week. Payment is negotiable. The girl must be drug and STD free. Contact me with your picture. BJ and more."

{¶ 50} Upon review, we find that the evidence of defendant's past dealings with prostitution and escort services was admissible for the purpose of proving he had knowledge "that escorts and prostitution go hand-in-hand * * *." Defendant's seventh assignment of error is overruled.

{¶ 51} "VIII. The trial court abused its discretion by limiting defendant's cross-examination of State's witnesses and not admitting material exculpatory and impeachment evidence into evidence for jury review."

{¶ 52} Defendant presents multiple arguments under this assignment of error. First, the court abused its discretion by prohibiting him from cross-examining a police officer about a certain document. We find no error because the officer was unable to authenticate, and had no knowledge about, the document.

{¶ 53} Second, the court abused its discretion by preventing defendant from cross-examining one of the prostitutes about her prior arrests. However, this court has held that questioning a witness "as to how many acts of prostitution she had performed over the last year" violated Evid.R. 608(B) because it "was not 'clearly probative' of her truthfulness or the lack thereof." *State v. Thomas* (Nov. 21, 1985), Cuyahoga App. No. 49749.

{¶ 54} Third, the court abused its discretion by preventing defendant from cross-examining one of the prostitutes regarding text messages she allegedly sent. However, it appears from the record that the document defendant was seeking admission of was a piece of paper on which he wrote the alleged text messages. We find no error in the court's exclusion of this evidence based on lack of foundation and authentication. See Evid.R. 901.

{¶ 55} Finally, the court erred by excluding various documents that defendant sought to introduce as public records under Evid.R. 803(8), including cover sheets and parts of reports involving the reduced charges and prior arrests of the two women who cooperated in the sting operation and investigation. However, defendant failed to prove their relevancy to the case at hand.

{¶ 56} For the above reasons, we find no error in the court's evidentiary rulings, and defendant's eighth assignment of error is overruled.

{¶ 57} "IX.   Trial Court erred by not providing jury instructions of applicable laws concerning Affirmative Defense and credibility of witness."

{¶ 58} With respect to jury instructions, a trial court is required to provide the jury a plain, distinct, and unambiguous statement of the law applicable to the evidence presented by the parties to the trier of fact.  *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 12, 482 N.E.2d 583.   "However, the trial court need not give the defendant's requested instructions verbatim but may use its own language to communicate the same legal principles to the jury."   *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E.2d 980, ¶108.   We review the refusal to give a jury instruction for an abuse of discretion. *Baker v. Cleveland*, Cuyahoga App. No. 93952, 2010-Ohio-5588, ¶28.

{¶ 59} In the instant case, defendant requested instructions on the burden of proof, reasonable doubt, and self-defense.   To establish self-defense, a defendant must show, among other elements, that he "had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force."   *State v. Barnes*, 94 Ohio St.3d 21, 24, 2002-Ohio-68, 759 N.E.2d 1240.   The legal concept of self-defense is wholly inapplicable to the case at hand.

{¶ 60} As to the burden of proof and reasonable doubt, the court instructed the jury as follows: "Burden of proof.   Every person is presumed innocent unless or until his guilt is established beyond a reasonable doubt.   The defendant must be acquitted unless the

state produces evidence which convinces you beyond a reasonable doubt of every essential element of the offense or offenses charged."

{¶ 61} Pursuant to R.C. 2901.05, this is an accurate statement of the law, and we find that the court acted within its discretion in instructing the jury. Defendant's ninth assignment of error is overruled.

{¶ 62} "X.  The Cumulative effect of the errors in the trial deprived violated [sic] Appellant's right to due process and rendered the trial fundamentally unfair."

{¶ 63} In *State v. DeMarco* (1987), 31 Ohio St.3d 191, 196-197, 509 N.E.2d 1256, the Ohio Supreme Court held that "a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial."  As we found no error in defendant's trial, this doctrine does not apply to the instant case. Defendant's tenth assignment of error is overruled.

{¶ 64} "XI.  Appellant's sentence is contrary to law because the offenses in the indictment are allied offenses of similar import under R.C. 2941.25 and jury verdict forms do not comply with R.C. 2945.75(A)(2)."

{¶ 65} The Ohio Supreme Court recently established the proper analysis for determining whether offenses qualify as allied offenses subject to merger pursuant to R.C. 2941.25. *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061.

{¶ 66} "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without

committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

{¶ 67} "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' *Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶50 (Lanzinger, J., dissenting).

{¶ 68} "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

{¶ 69} "Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R .C. 2941.25(B), the offenses will not merge." Id. at ¶48–51.

{¶ 70} In the instant case, defendant was convicted of one count of promoting prostitution in violation of R.C. 2907.22(A)(2), which makes it a criminal offense to knowingly "[s]upervise, manage, or control the activities of a prostitute in engaging in sexual activity for hire," and two counts of R.C. 2907.22(A)(4), which states that "[n]o person shall knowingly * * * induce or procure another to engage in sexual activity for hire."

{¶ 71} Upon review, we find that these offenses are not allied because a violation of subsection (A)(2) occurs when an offender "controls" the business of a prostitute.   See

*State v. McGlothin* (Aug. 2, 1995), Montgomery App. No. CA 14687 (holding that R.C. 2907.22(A)(2) "does not require that the prostitute complete a sexual act in order for the 'supervisor' to have committed the offense. All that is necessary is that the supervision, management, or control of the prostitute's activities was for the purpose of the prostitute's providing sexual activity for hire"). In the case at hand, defendant's conviction involves his day-to-day operation of the website and management of the escorts.

{¶ 72} Defendant's convictions for violating R.C. 2907.22(A)(4), on the other hand, are based on his two separate acts of inducing the women involved in the sting operation to engage in sexual activity for hire. As defendant's convictions are not allied offenses of similar import, his eleventh assignment of error is overruled.

{¶ 73} "XII. The Trial Court erred by denying the motion to dismiss for vague and overbroad Promoting Prostitution statues [sic]."

{¶ 74} Specifically, defendant argues that R.C. 2907.22 is vague because it fails to include language that prohibits the "business enterprise of prostitution." However, we find that the phrase "activities of a prostitute in engaging in sexual activity for hire" unambiguously expresses that same concept. Additionally, defendant argues that the statute is overbroad on its face as it may conceivably be "applied to the constitutionally protected activity of making a sexually explicit videotape." Defendant cites no law to support this argument and identifies no specific parties or examples beyond the abstract. See *Members of City Council of City of Los Angeles v. Taxpayers for Vincent* (1984), 466 U.S. 789, 800, 104 S.Ct. 2118, 80 L.Ed.2d 772 (holding that "the mere fact that one can

conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge").

**{¶ 75}** Accordingly, defendant's twelfth and final assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


JAMES J. SWEENEY, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR