[Cite as *Harris v. Mayfield Hts.*, 2011-Ohio-1943.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 95601

DEMETRIUS HARRIS

PLAINTIFF-APPELLANT

vs.

CITY OF MAYFIELD HEIGHTS, ET AL.

DEFENDANTS-APPELLEES

JUDGMENT:
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-728167

BEFORE:    E. Gallagher, J., Stewart, P.J., and Cooney, J.

RELEASED AND JOURNALIZED:    April 21, 2011

ATTORNEY FOR APPELLANT

James R. Willis
323 W. Lakeside Avenue
420 Lakeside Place
Cleveland, Ohio    44113-1009

ATTORNEYS FOR APPELLEES

Leonard F. Carr
Bryan L. Carr
The Carr Law Firm
1392 S.O.M. Center Road
Mayfield Hts., Ohio    44124

EILEEN A. GALLAGHER, J.:

{¶ 1} Demetrius Harris appeals from the decision of the trial court dismissing his action in replevin for lack of jurisdiction. Harris argues the trial court erred when it dismissed his action, when it ruled that it did not have jurisdiction, and when it failed to issue findings of fact and conclusions of law. For the following reasons, we reverse the decision of the trial court.

{¶ 2} On June 1, 2010, Harris filed the instant complaint in replevin as well as a motion for immediate return of seized property against the city of Mayfield Heights, the Mayfield Heights Police Department, the Mayfield Heights Chief of Police, and five unknown law enforcement officers (defendants-appellees, hereinafter "appellees"). The trial court set a hearing date for June 21, 2010.

{¶ 3} On June 16, 2010, the appellees filed a motion to dismiss and a motion to adjourn the hearing, arguing that since agents of the United States government took possession of the funds, the court of common pleas was without jurisdiction to hear Harris's replevin action. Harris opposed this motion.

{¶ 4} On June 21, 2010, the trial court conducted a replevin hearing and ordered Harris to file a brief within 14 days, showing cause why his case should not be dismissed for lack of jurisdiction.

Subsequently, Harris and the appellees filed their briefs on the issue of jurisdiction. On July 26, 2010, the trial court granted appellees' motion to dismiss for lack of jurisdiction and ruled that Harris's motion for the immediate return of the seized property was moot. Harris appeals, raising the three assignments of error contained in the appendix to this opinion.

{¶ 5} The underlying facts of this case began on May 24, 2010, when Andrew Rocco, an off-duty Mayfield Heights police officer, was driving on Mayfield Road in that city and observed a black Land Rover driving beside him. Rocco wrote in the police report, which was attached to appellees' motion to dismiss/motion to adjourn filed in the trial court: "I recognized the vehicle from a previous traffic stop and recalled that the driver from the previous traffic stop was currently suspended and had a warrant for his arrest. I looked at the driver and noticed that he met the same physical description as the driver that had been previously stopped."[1]

{¶ 6} Off-duty Officer Rocco notified Officer Joseph

---

[1]Harris's reply brief reflects that the owner of the Land Rover in question was a 40-year-old man who weighs approximately 340 pounds and that Harris was a 22-year-old man who, according to police reports attached to appellees' motion to dismiss, weighed 210 pounds.

Mytrosevich via portable radio of his suspicions, and Mytrosevich effected a traffic stop of the Land Rover. Officer Rocco and Officer Thomas Rovniak, who had arrived on the scene, assisted Officer Mytrosevich with the stop.

{¶ 7} Officer Mytrosevich spoke with Harris and asked for his driver's license. Harris indicated that he did not have any identification with him, but he provided his name and social security number to Officer Mytrosevich. During this conversation, Officer Rovniak instructed Officer Mytrosevich to remove Harris from the vehicle, which he did, and after patting him down for weapons, Mytrosevich placed Harris in handcuffs. According to the police reports, which were made part of the record, Officer Mytrosevich recovered approximately $600 from Harris's person. Additionally, Officers Rovniak and Rocco recovered approximately $14,000 in U.S. currency from the front passenger seat where, apparently, it was in plain view. When asked about the money, Harris related to the officers that $6,000 was his, which he planned to use to purchase a 2002 Honda, and the balance of $7,500 was his uncle's, which was going to be used to post bond for an unidentified person.

{¶ 8} It was at this point, after Harris's detention and the seizure of his property, that Mayfield Heights police dispatch informed the officers that the social security number, which Harris had provided, reflected that Harris was driving under suspension. The officers placed Harris under arrest. The officers ordered the Land Rover towed and placed the seized U. S. currency into one of three containers at police department headquarters. Officers deployed a K-9 dog to perform a "currency sniff" and the dog alerted to the container into which the officers had placed the seized money. The officers then counted the seized monies, which totaled $15,084.47 ($564.47 from Harris's pocket and $14,520 from the front passenger seat), all of which was presumably secured at the Mayfield Heights Police Department.

{¶ 9} Reports reflect that Mayfield Heights Police Sergeant, Steve Brown, contacted an agent from the Drug Enforcement Administration. According to Officer Mytrosevich, who prepared Mayfield Heights Police Department Incident Report number 10-03359, the agent "said that he would be coming in on Tuesday, May 25, 2010 to pick up the U.S. currency that was seized."

{¶ 10}As stated above, Harris appeals the dismissal of his

replevin action for lack of jurisdiction. The three assignments of error are contained in the appendix to this opinion. Because we find Harris's second assignment of error dispositive, we shall address it first. In his second assignment of error, Harris argues the trial court erred when it determined it did not have jurisdiction to hear the instant replevin action. For the following reasons, we find Harris's assigned error to have merit.

{¶ 11}Initially, we note that based on the record before this court, it is unclear whether the federal government now possesses the funds at issue. On May 24, 2010, Mayfield Heights Police Department seized $15,084.47 from Harris. On May 26, 2010, Mayfield Heights completed a Request for Adoption of State or Local Seizure form. From that point on, the record is silent as to whether the federal government approved the Request for Adoption and whether the federal government actually took custody of the funds. The appellees state in their brief that the DEA "took possession of the currency." However, they cite no evidence in the record supporting this allegation.

{¶ 12}The United States Code outlines three options for seizures, as follows:

"(2) Seizures pursuant to this section shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure, except that a seizure may be made without a warrant if

(A) a complaint for forfeiture has been filed in the United States district court and the court issued an arrest warrant in rem pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims;

(B) there is probable cause to believe that the property is subject to forfeiture and

(i) the seizure is made pursuant to a lawful arrest or search; or

(ii) another exception to the Fourth Amendment warrant requirement would apply; or

(C) the property was lawfully seized by a State or local law enforcement agency and transferred to a Federal agency."

18 U.S.C. 981(b)(2).

{¶ 13}Although it is not clear in the present case, it appears that the appellees argue that under subsection (C), the money was lawfully seized by local law enforcement and transferred to a federal agency. In particular, the appellees claim the seizure was an adoptive forfeiture by the federal authorities.

{¶ 14}Additionally, attached to appellees' motion to dismiss (Exhibit B) is a copy from the "Asset Forfeiture Policy Manual" of unknown origin, "Appendix F — Equitable Sharing Attachments

— Request for Adoption of State or Local Seizure." Page three of that document reads as follows:

{¶ 15}"Immediate Probable Cause Review needed if following factors are not present:

> • seizure was based on judicial warrant
>
> • arrest made in connection with seizure
>
> • drugs or other contraband were seized from the person from whom the property was seized."

{¶ 16}Immediately below the above-quoted language is the following statement: "Investigative Agency Headquarters Approval" and then a signature and date line, both of which remain blank. Accordingly, there is no evidence before this court that the federal government ever granted approval of this seizure.

{¶ 17}It is obvious and uncontroverted that the seizure in this case was NOT based on a federal warrant and that drugs or other contraband were NOT seized from the person from whom the property was seized. And, although the officers did place Harris under arrest, the arrest was NOT made until after the seizure and cannot possibly be asserted to have been made in connection to the seizure as the officers only charged Harris with the offense of

driving under suspension.   This court notes that the appellees make gratuitous references in their briefs to criminal charges filed against Harris for arrests in 2008 and 2009.   We find these references to have no bearing to the stop and arrest on May 24, 2010 and find the references merely superfluous and   misleading.

{¶ 18}Appellees do not, and cannot, indicate how the requirement that the cash was lawfully seized was established prior to forfeiture other than it was likely based on the K-9 positive identification of narcotics on the currency and the police officer's inference of criminal activity.   Moreover, the officers' inference of criminal activity was not based on the activity of Harris, but on that of a known driver of the black Land Rover, which Harris was unfortunate enough to be driving at the time of his arrest.

{¶ 19}We find the appellees' reliance on the drug dog's positive hit on Harris's currency insufficient to support an inference of criminal activity.   In *United States v. $5,000 in U.S. Currency* (C.A.6, 1994), 40 F.3d 846, the court addressed the unreliability of using narcotics-trained dogs in drug cases.   The court relied on studies showing that most currency in this country is tainted with traces of narcotics.   Id.   The court found "the evidentiary value of the

narcotics dog's alert to be minimal." Id. at 849. The court reversed the order of forfeiture because there was little other evidence to connect the currency to drug activity. Id. at 850; See *United States v. $53,082.00 in United States Currency* (C.A.6, 1993), 985 F.2d 245, 250, citing *United States v. $80,760.00 in United States Currency* (N.D.Texas 1991), 781 F.Supp. 462, 475, fn. 32 ("There is some indication that residue from narcotics contaminates as much as 96% of the currency currently in circulation."); see, also, *$5,000 in United States Currency* at 849; *United States v. Carr* (C.A. 3, 1994), 25 F.3d 1194; *United States v. $639,558.00 in United States Currency* (C.A. D.C. 1992), 955 F.2d 712, 714.

{¶ 20}In *Six Hundred Thirty-Nine Thousand Five Hundred and Fifty-Eight Dollars ($639,558) in United States Currency*, the court cited the testimony of an expert, Dr. James Woodford, who testified that 90% of all cash in the United States contains sufficient quantities of cocaine to alert a trained dog. The court also noted that there was at least one study indicating that up to 97% of all bills in circulation are contaminated by cocaine, with an average of 7.3 micrograms of cocaine per bill. *Crime and Chemical Analysis* 243 SCIENCE 1554 (1989). Id. At a footnote, the court wrote:

{¶ 21}"Why the nation's currency is so thoroughly corrupted has been a topic of inquiry.  It has been estimated that one out of every three circulating bills has been involved in a cocaine transaction.  R. Siegel, Intoxication 293 (1989).  Cocaine attaches — in a variety of ways — to the bills, which in turn contaminate others as they pass through cash registers, cash drawers, and counting machines at banks and commercial establishments, id.; *Crime and Chemical Analysis*, supra note 2, at 1555; Tr. I at 28.  Dr. Woodford testified that, as a result, bills may contain as little as a millionth of a gram of cocaine, but that is many times more cocaine than is needed for a dog to alert.  Officer Beard related that 10 percent of the alerts he had witnessed were to cash alone, a phenomenon we have encountered before.  *United States v. Trayer*, 898 F.2d 805, 808-09 & n. 3 (D.C.Cir.1990).  *See generally* Taslitz, *Does the Cold Nose Know? The Unscientific Myth of the Dog Scent Lineup*, 42 Hastings L.J. 15, 29 & n. 71 (1990).  If the information related above proves accurate, a court considering whether a dog sniff provides probable cause, *see generally United States v. Colyer*, 878 F.2d 469, 471 & n. 2, 483 (D.C.Cir.1989), may have to take into account the possibility that the dog signaled only the presence of money, not

drugs." Id. at fn 2.

{¶ 22}Here, similar to the federal cases cited above, the city of Mayfield Heights had no evidence, other than the positive drug sniff of the narcotics dog, that the money found on Harris was related to drug activity. Additionally, they had no basis to seize the funds as evidence of the crime for which Harris was being arrested, driving under suspension. Lastly, the appellees' allegation that Harris's criminal history supports this seizure cannot be used as a basis to seize the funds. Harris's criminal history has no bearing on the seizure of the funds on May 24 as, on that date, the police arrested him only for driving under suspension. Moreover, Harris had a reasonable explanation for his possession of the money.

{¶ 23}The Fifth Amendment to the Constitution of the United States made applicable to the several States through the Fourteenth Amendment states:

{¶ 24}"No person shall be * * * deprived of life, liberty or property without due process of law."

{¶ 25}Article I of the Ohio Constitution provides:

"All men are, by nature, free and independent, and have certain inalienable rights, among which are those of * * * acquiring, possessing, and protecting property * * *."

{¶ 26}In the present case, $15,084.47 was taken from Harris by the State, without due process of law or probable cause. It was, pure and simple, an unconstitutional taking.

{¶ 27}Primarily, there was no crime associated with this seizure. In fact, the officers charged Harris with only a misdemeanor offense of driving under suspension. Harris had no opportunity to challenge the illegal taking of the money but for the filing of this action in replevin as the State, after seizing the currency, allegedly funneled it to the United States of America. Within eight days of the State's taking of his property, Harris did file this action in replevin. Harris asserted his rights immediately and there is no evidence before this court that the appellees provided Harris with any notice of a forfeiture action in any court(s); rather, the record contains only a "request for adoption." Therefore, the State effectively precluded Harris from asserting any claim in the United States District Court. Harris then properly filed this action in the Common Pleas Court of Cuyahoga County.

{¶ 28}The State's arguments that they do not have the seized property are disingenuous. The State, by acting as a conduit from the owner or possessor of the property to the United States of

America is entitled, upon forfeiture, to the return of a substantial amount of the monies seized. Accordingly, the State has a genuine pecuniary interest in any seized property. The artificiality of their specious claims that since they no longer are in possession of the seized property, they cannot be held accountable in replevin, can be viewed as an attempt by the State to knowingly circumvent the replevin statutes. The State levies a preposterous argument. For example, if a thief places stolen property in the home of a third person, should he not be held accountable for its return when the whereabouts of the property are discovered? The mere deposit of currency in a repository operated by the United States government does not obviate the obvious, the depositor has rights to that which has been deposited.

{¶ 29}In *Black v. Cleveland* (1978), 58 Ohio App.2d 29, 387, 387 N.E.2d 1388, this court held that one in possession of property sought to be replevied at the time the action is commenced may not evade the action in replevin by transferring possession of property to a third party. Specifically:

> "Another reason exists for the decision reached herein. An action in replevin is founded upon an unlawful detention, regardless of whether an unlawful taking has occurred. The action 'is strictly a possessory action, and it lies only in behalf

of one entitled to possession against one having, at the time the suit is begun, actual or constructive possession and control of the property.'   J. E. Cobbey, Replevin, Section 64 (2d ed. 1900). It has been held, however, that replevin will lie even though the defendant did not have actual possession of the property at the commencement of the action, where the defendant sold the property just prior to the actual filing of the action and the plaintiff was without knowledge of that fact.   *Tischler v. Seeley*, 12 C.D. 750, 14 C.C. (N.S.) 236, affirmed without opinion, 60 Ohio St. 629, 54 N.E. 1110 (1899); See also *Helman v. Withers* (1892), 3 Ind.App. 532, 30 N.E. 5."   Id. at 32-33.

{¶ 30}The Mayfield Heights Police Department may not have actual possession of the $15,084.47 taken from Harris, but they most certainly have constructive possession of that money.   Actual possession entails ownership or physical control, whereas constructive possession is defined as knowingly exercising dominion and control over an object even though that object may not be within one's physical possession.   *State v. Chandler*, Cuyahoga App. Nos. 93664 and 93665, 2011-Ohio-590, citing *State v. Hankerson* (1982), 70 Ohio St.2d 87, 434 N.E.2d 1362.

{¶ 31}Like our prior holding in *Black,* we find that the city of Mayfield Heights has constructive possession of the funds and, therefore, they cannot abdicate any and all responsibility for the seized property in an action in replevin by transferring the funds to the federal government.

{¶ 32}The separate concurring opinion to *State v. Primm*, Cuyahoga App. No. 94630, 2011-Ohio-328, analyzed similar facts and circumstances, and accordingly, we find it instructive on this case. In *Primm*, the defendant was stopped for a traffic violation, and in addition to the $26,318 in cash, police also seized approximately 155 grams of marijuana and a 9 millimeter handgun. The record in *Primm* reflects that the police transferred the $26,318 pursuant to 18 U.S.C. 981(b)(2). Contemporaneous to the filing of the indictment, the State filed a forfeiture petition against Primm on September 26, 2007, seeking the $26,318, a handgun, and two cell phones.

{¶ 33}As a condition of his plea, Primm agreed to forfeit a firearm and two cellular phones. The court signed the order of forfeiture, which included the seized funds, on October 1, 2007, and it was not until June 6, 2008 that Primm filed a motion for the return of the monies seized. In the *Primm* case, as distinguished from the instant case, the monies had been turned over to the United States and, in April 2007, the Department of Justice issued a "Declaration of Administrative Forfeiture." No claims were filed, and the funds were officially forfeited.

{¶ 34}Nonetheless, the separate concurring opinion in

*Primm* analyzed the applicable U.S. Code and determined that although the federal government possessed the currency, the police effectively acted preemptively and forfeited the money independent of judicial review. Id. Although the opinion in *Primm* acknowledges that once the federal government lawfully seizes currency, a defendant's remedy no longer lies with the state court system, the facts in the instant case are distinguishable. Id., see, also, 18 U.S.C. 983(e)(5); *State v. Scott* (Mar. 22, 2000), Mahoning App. No. 98 CA 174; *State ex rel. Chandler v. Butler* (1991), 61 Ohio St.3d 592, 575 N.E.2d 833. Here, this court has no evidence before it that the federal authorities ever adopted Mayfield Heights' Request for Adoption of State or Local Seizure and, therefore, the State never lawfully transferred the seized property.

{¶ 35}The local law enforcement's immediate transfer of the funds, without any proper determination as to whether the seizure was lawful, is tantamount to hiding the funds with the federal government and washing their hands of any responsibility for control or refund of the currency. Although distinguishable, it is analogous to *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, where the United States Supreme Court determined

that suppression by the prosecution of evidence favorable to an accused upon request violates due process where evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of the prosecution. This court analyzed the requirements of *Brady* in the context of newly discovered exculpatory evidence in *State v. Russell*, Cuyahoga App. No. 94345, 2011-Ohio-592, and determined that the prosecutor's argument that it did not have access to the exculpatory evidence was not good enough. Specifically, the *Russell* court held that prosecutors have a duty to learn of any favorable evidence known to others acting on the government's behalf in the case and that failure to turn over exculpatory evidence violates their constitutional duty.

{¶ 36}Accordingly, like *Russell,* we find that "it is not good enough" that the appellees in this case merely argue that they no longer have possession of the currency at issue. Especially because the record is conspicuously silent as to whether the federal authorities possess the funds at issue and whether the local government lawfully seized the funds on May 24, 2010.

{¶ 37}Based on the foregoing, we find that the trial court erred when it dismissed Harris's replevin action. Our analysis of Harris's

second assignment of error renders his first and third assignments of error moot.

{¶ 38}The decision of the trial court is reversed, and the case remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

MELODY J. STEWART, P.J., CONCURS IN
JUDGMENT ONLY;
COLLEEN CONWAY COONEY, J., CONCURS
IN JUDGMENT ONLY (WITH SEPARATE
OPINION ATTACHED)


**COLLEEN CONWAY COONEY, J., CONCURRING IN JUDGMENT ONLY:**

{¶39}I concur in judgment only.

{¶40}Harris's replevin action was improperly dismissed

because, unlike the situation in *State v. Primm*, Cuyahoga App. No. 94630, 2011-Ohio-328, there is no evidence of a forfeiture in the instant case. Defendants' Ex. B., the request for adoption of state or local seizure form, specifically indicates no state forfeiture action was initiated and denies that another federal agency has been contacted and declined to proceed with this forfeiture. On this record, the trial court has jurisdiction under R.C. 2981.03(A)(4) to hear Harris's petition that alleges the unlawful seizure of his property.

## Appendix A

Assignments of Error:

"I. The trial court erred, or abused its discretion, when it summarily dismissed the appellant's replevin action.

"II. Given the insuperable tenet that possession obtained through an invalid seizure neither strips the first court of its jurisdiction nor vests it in the second court, it follows the court erred when it inferentially ruled it lacked jurisdiction.

"III. The court erred, and the appellant was denied due process, when the court summarily dismissed the appellant's replevin action, indeed without making any findings of fact or articulating any conclusions of law."