[Cite as *Harris v. Mayfield Hts.*, 2013-Ohio-2464.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98993**

# DEMETRIUS HARRIS

PLAINTIFF-APPELLANT
CROSS-APPELLEE

vs.

# CITY OF MAYFIELD HEIGHTS, ET AL.

DEFENDANTS-APPELLEES
CROSS-APPELLANTS

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-728167

**BEFORE:** Stewart, A.J., Celebrezze, J., and Jones, J.

**RELEASED AND JOURNALIZED:** June 13, 2013

**ATTORNEY FOR APPELLANT-CROSS-APPELLEE**

James R. Willis
323 West Lakeside Avenue
Lakeside Place, Suite 420
Cleveland, OH    44113


**ATTORNEYS FOR APPELLEES-CROSS-APPELLANTS**

Leonard F. Carr
L. Bryan Carr
The Carr Law Firm
1392 S.O.M. Center Road
Mayfield Heights, OH    44124

MELODY J. STEWART, A.J.:

{¶1} When the city of Mayfield Heights police stopped a vehicle driven by appellant Demetrius Harris, they found a total of $15,084.47 in cash on him and on the front seat of the vehicle. A drug sniffing dog alerted to the presence of drugs on the money. Believing that the money was the product of drug trafficking, the police seized it and then turned it over to the federal Drug Enforcement Agency ("DEA"), which apparently successfully instituted forfeiture proceedings against it. No drug charges were filed against Harris (he was cited for a misdemeanor driving while under suspension), so he filed a replevin action against the city for the return of the money. The court, after denying Harris's motion for summary judgment, conducted a trial in his absence. A jury found that Harris did not own the money and that the money was the "fruit of illegal activity." The court entered judgment for the city and denied a motion for judgment notwithstanding the verdict. Harris's primary argument on appeal is that the court erred by refusing to grant him judgment as a matter of law on the replevin action. The city cross-appeals, arguing that the court erred by refusing to deem admitted certain requests for admissions and by denying the city's motion for summary judgment.

{¶2} Harris's appeal stands on principle: he concedes that the police could lawfully take possession of the money for safekeeping in light of his arrest for driving while under a license suspension, but argues that they had no basis for turning it over to the federal government for civil forfeiture proceedings under federal statutes, particularly

when he was only charged with a misdemeanor offense that would not support forfeiture under Ohio law. We agree in principle that the police cannot simply seize personal property as contraband under the guise of drug enforcement. Nevertheless, Ohio law permits police departments that have seized suspected contraband to seek forfeiture under federal law. At trial there was competent, credible evidence offered by the city to show that the money taken from the vehicle was the fruit of the drug trade and hence, contraband that was not subject to replevin. For this reason, we have no basis to overturn the jury's verdict, and affirm the judgment.

I

{¶3} The evidence showed that the police believed that a new Range Rover owned by a suspected drug dealer was involved in drug trafficking within the city. That vehicle had earlier been stopped by a police officer for a traffic infraction and the driver (not the owner) was released with a verbal warning. The police officer who stopped the driver later determined that the driver had an outstanding warrant. The next day, that same officer was off-duty when he spotted the Range Rover. Thinking that the driver of the Range Rover was the same person who he had stopped the previous day and who had an outstanding warrant, the officer advised other officers that he located the vehicle. An on-duty officer stopped the vehicle and discovered that it was Harris, and not their original suspect, who was driving it. The officer found a paper bag containing thousands of dollars in bills in plain view on the front seat. He also noticed that the side air bags of the new Range Rover had been removed even though there was no visible evidence of

any impact on the vehicle. The police officer testified that removing the side air bag was a common practice for transporting drugs.

{¶4} Harris gave the officer his social security number and a record check confirmed that he was driving under a license suspension. He identified the suspected drug dealer as the owner of the vehicle and said that $7,500 of the cash found in the car belonged to the owner of the Range Rover and was to be used as bail money for another individual. Harris said that he owned the rest of the money and intended to use it to purchase a car. When asked what he did for a living, Harris told the police that he managed a car wash. The officer asked Harris about the side air bags being removed, noting that there had been no evidence of any impact that would have activated the air bags. Harris said that the vehicle had been in an accident and repaired, but he could not explain why the repair shop had returned the vehicle without fixing the air bags.

{¶5} About five minutes into the stop, a male approached the police officer, said that he was the nephew of the man who owned the vehicle, and asked if he could take possession of it. The officer found this suspicious and refused to hand the vehicle over to him. A drug sniffing dog alerted to the presence of drugs on the cash and two areas of the vehicle, but no drugs were found. The police seized the cash and cited Harris for driving while under a license suspension.

{¶6} No drug charges were ever filed against Harris. The city turned the cash over to the DEA and a police officer testified that the federal government issued a notice of forfeiture. Harris filed this replevin action with the court of common pleas, but the

court dismissed the complaint finding it lacked jurisdiction, presumably on grounds that it had no authority to act when the funds were in the possession of the federal government. On appeal, with two members of the panel concurring in judgment only, this court reversed the dismissal. *See State v. Harris*, 8th Dist. No. 95601, 2011-Ohio-1943.

**{¶7}** On remand, Harris filed a motion for summary judgment that he characterized as a motion for judgment on the pleadings. He did so because he offered no evidence of any kind in support of the motion. The motion rested on the proposition that we earlier noted — that the city had no basis for a forfeiture under Ohio law — and that without that basis for taking the money (apart from safekeeping) it could not turn it over to the federal government for forfeiture proceedings. The court denied the motion for summary judgment and the case proceeded to trial without Harris, who was imprisoned on a drug conviction and whose request for permission to attend the trial had been denied. Harris's attorney did not put on any evidence, apart from cross-examining the off-duty police officer who alerted the police to the Range Rover. Counsel relied essentially on the theory outlined in the motion for summary judgment. The jury found against Harris and in interrogatories made three findings: (1) "plaintiff is not the rightful owner of monies seized"; (2) "funds were the fruit of illegal activity"; and (3) "plaintiff has not established his claim of replevin."

**{¶8}** Harris sought judgment notwithstanding the verdict on grounds that the defense verdict was unsupported by the evidence and that the court erred by refusing to

allow him to attend trial. The court denied the motion without opinion and this appeal followed.

## II

**{¶9}** We first consider Harris's claim that the court erred by denying his motion for summary judgment and his motion for judgment notwithstanding the verdict. Both arguments are identical and premised on the idea that it makes no difference whether the money seized from the vehicle was ultimately forfeited to the federal government. Harris argues that the city had no basis for seeking forfeiture under Ohio law because he did not commit a chargeable criminal offense under state drug laws. With no demonstrable basis for thinking that the money itself was contraband, Harris argues that the city could not have transferred that money to the federal government for forfeiture proceedings and is thus accountable to him.

**{¶10}** This case involves a procedure known as an "adoptive forfeiture." "Under the adoptive-forfeiture framework, a state agency — having fully completed an investigation, arrest, and seizure — can turn both the case and the seized assets over to an appropriate federal agency." Sucoff, Note, *From the Courthouse to the Police Station: Combating the Dual Biases That Surround Federal Money-Laundering Asset Forfeiture*, 46 New Eng.L.Rev. 93, 110 (2011). In essence, the state agency that seized the assets requests a federal agency to "adopt" the seizure and proceed with federal forfeiture as though it was the federal agency, not the state agency, that made the seizure. *United States v. One Ford Coupe Auto.*, 272 U.S. 321, 325, 47 S.Ct. 154, 71 L.Ed. 279 (1926).

When the federal government takes possession of state-seized assets to seek forfeiture, the federal government's subsequent seizure of the property relates back to the moment when the state authorities initially seized it. *United States v. Alston*, 717 F. Supp. 378, 380 (M.D.N.C. 1989).

{¶11} Federal adoptive forfeitures are typically uncontested, administrative forfeitures — if a party does not contest the forfeiture, the assets are automatically forfeited to the government. *See* 18 U.S.C. 983(a)(2)(B). It is estimated that upwards of 80 percent of all forfeitures are uncontested. McCaw, *Asset Forfeiture as a Form of Punishment: A Case for Integrating Asset Forfeiture into Criminal Sentencing*, 38 Am.J.Crim.L. 181, 190 (2011).

{¶12} Adoptive forfeitures are civil in nature and independent of any criminal case; indeed, civil forfeiture proceedings may be brought against any assets "even if its owner is acquitted of or never called to defend against criminal charges." *See, e.g., United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 361-363, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984) (holding that a claimant's assets were subject to forfeiture even though claimant was acquitted on federal criminal charges); *United States v. Property Identified as 3120 Banneker Dr., N.E., Washington, D.C.*, 691 F.Supp. 497, 499 (D.D.C.1988). And being civil in nature, adoptive forfeitures proceed in rem (against the asset, not the person). This means that the federal government need only prove by a preponderance of the evidence that the property was derived from, or was used to commit, a crime. *See* 18 U.S.C. 983(c)(3).

**{¶13}** The virtue of an adoptive forfeiture, at least from the city's perspective, is that the city had no likelihood of obtaining forfeiture under Ohio's strict forfeiture laws, but a far greater success of obtaining forfeiture under less strict federal law. The city could not bring a criminal forfeiture action under R.C. 2981.04 because the offense of driving while under a license suspension does not allow for a forfeiture; it could not bring a civil forfeiture action under R.C. 2981.05 because in order for the property to be defined as "contraband" pursuant to R.C. 2981.02, it had to be "involved in an offense" — and there was no criminal prosecution relating to the money found in the vehicle driven by Harris. The applicable federal forfeiture statute, 21 U.S.C. 881(a)(6), however, allows a civil forfeiture for proceeds of a drug transaction or as property used to facilitate the possession, transportation, sale, concealment, receipt, or distribution of a controlled substance. Forfeiture is warranted under 21 U.S.C. 881 when the government establishes by a preponderance of the evidence a "'substantial connection' between the property" and a controlled substance offense. *See* 18 U.S.C. 983(c)(3). So with no conceivable basis for forfeiture under Ohio law, the federal statutes provided the basis for forfeiture.

**{¶14}** The incentive for a state agency like the city to seek federal forfeiture is that it stands to recover up to 80 percent of any assets forfeited to the federal government depending on its degree of participation "in the law enforcement effort resulting in the forfeiture." 21 U.S.C. 881(e)(3). Those moneys are returned directly to the police department and can be used by the police to, among other things, buy equipment, obtain training, and improve police facilities. In short, adoptive forfeiture proceedings allowed

the city to hand over to the federal government the money seized from Harris, have the government prosecute the forfeiture proceedings, and collect a share of the forfeited money to fund its police department.

**{¶15}** The use of the adoptive forfeiture procedure has been both praised and criticized. *See generally* Worrall, Assett Forfeiture, Problem-Oriented Guides for Police Response, Guides Series No. 7 (2008) http://www.cops.usdoj.gov/Publications/e1108-Asset-Forfeiture.pdf (last visited May 29, 2013). The primary criticism of adoptive forfeitures is that they allow the police to circumvent state forfeiture laws and unduly influence police operations by incentivizing the seizure of contraband for police funding purposes. *See, e.g.*, Holcomb, Kovandzic, and Williams, *Civil Asset Forfeiture, Equitable Sharing, and Policing for Profit in the United States*, 39 J. Crim. Justice 273 (2011).

**{¶16}** Nevertheless, the doctrine of adoptive forfeitures was well-established at common law and has been incorporated into American jurisprudence in *Taylor v. United States*, 44 U.S. 197, 205, 11 L.Ed. 559 (1845):

> At the common law any person may, at his peril, seize for a forfeiture to the government, and, if the government adopts his seizure, and institutes proceedings to enforce the forfeiture, and the property is condemned, he will be completely justified. So that it is wholly immaterial in such a case who makes the seizure, or whether it is irregularly made or not, or whether the cause assigned originally for the seizure be that for which the condemnation takes place, provided the adjudication is for a sufficient cause.

*See also One Ford Coupe Auto.*, 272 U.S. at 325 (holding that the United States may adopt seizure of property forfeitable under federal law even if seized by local official or one with no authority to make seizure).

### III

{¶17} That a federal agency could lawfully seek forfeiture of assets seized from Harris does not settle the issue of whether the city could lawfully seize the cash taken from Harris and hand it over to a federal agency for an adoptive forfeiture. The answer to that question is twofold: Harris conceded at trial that the police lawfully seized the cash and Ohio law expressly permits state agencies to hand over assets to the federal government for adoptive forfeitures.

{¶18} During trial, Harris "conceded that the stop was lawful for whatever reason." Tr. 63. He also conceded that there was a "lawful seizure." Tr. 66. These concessions were compelled by the facts of the case.

{¶19} Once the police seized the cash from Harris, they could turn it over to the federal government for an adoptive forfeiture. This process is expressly authorized by R.C. 2981.14(A), which states: "Nothing in this chapter precludes the head of a law enforcement agency that seizes property from seeking forfeiture under federal law. If the property is forfeitable under this chapter and federal forfeiture is not sought, the property is subject only to this chapter."

{¶20} R.C. 2981.14(A) thus distinguishes Ohio from other states that have held that state agencies could not forward funds to federal agencies for adoptive forfeiture

proceedings without first complying with the dictates of their respective forfeiture laws. *See, e.g., Albin v. Bakas*, 141 N.M. 742, 160 P.3d 923 (N.M.App. 2007); *DeSantis v. State*, 384 Md. 656, 866 A.2d 143, 147-148 (2005). Regardless of whether the city police had cause to seize the cash from Harris, they could lawfully turn it over to the DEA for adoptive forfeiture proceedings under federal law. Liability cannot attach from an act that is expressly sanctioned by R.C. 2981.14(A). It follows that Harris was not entitled to judgment as a matter of law on either his complaint, his motion for summary judgment, or his motion for judgment notwithstanding the verdict.

IV

{¶21} We next address the substance of the replevin action in which the jury found that the cash seized from Harris was contraband because it was the product of illegal drug trafficking.

{¶22} In *Whittington v. City of Cleveland Police Dept.*, 8th Dist. No. 91559, 2009-Ohio-1604, we stated:

> A replevin action is essentially a claim of ownership in which a person with the right to immediate possession of property seeks to recover possession of that property. *Superior Piping Contrs., Inc. v. Reilly Industries, Inc.*, Cuyahoga App. No. 90751, 2008-Ohio-4858, ¶ 37. "The right of possession of the property because of title or interest in it is an essential element in a Replevin action." *J & J Truck and Trailer Repair v. Cyphers*, (Dec. 12, 1980), Montgomery App. No. 6625, 1980 Ohio App. LEXIS 10704, at *3. *Id*. at ¶ 3.

Thus, there are two elements to a replevin action: "(1) that the plaintiff is the owner of the property in question and (2) that he is entitled to possession of the property in

question." *Brown v. Rowlen*, 5th Dist. No. CA G 08 025, 1994 Ohio App. LEXIS 2174 (May 12, 1994).

**{¶23}** It is at this point that we question whether Harris had any basis for a replevin action against the city in light of the adoptive forfeiture by the federal government. As we understand Harris's argument, he does not contest the validity of the federal government's adoptive forfeiture — indeed, the city represented to the trial court that neither Harris nor the owner of the vehicle appeared to contest the federal forfeiture proceedings. What Harris does contest is the right of the police to take the cash from him and turn it over to the federal government when he claims that the police had no basis for seeking a forfeiture of the cash under state law.

**{¶24}** The premise of Harris's argument is demonstrably wrong given that he conceded the validity of the seizure, and that R.C. 2981.14(A) expressly authorized the police to seek forfeiture under federal law. What is more, if Harris had an issue with the forfeiture, the time to contest the seizure was during the federal forfeiture proceedings. As we earlier noted, an adoptive forfeiture creates the fiction that the federal government "adopts" the initial seizure by the police as though it had been done by federal, not state, agents. Once the city turned the money over to the federal government, its involvement in the case terminated and it was no longer responsible for the money. Federal law expressly addresses this point in 18 U.S.C. 981(c), which states: "Property taken or detained under this section shall not be repleviable, but shall be deemed to be in the custody of the Attorney General or the Secretary of the Treasury, as the case may be,

subject only to the orders and decrees of the court or the official having jurisdiction thereof." In other words, Harris had no right of replevin against the city. *See State v. Primm*, 8th Dist. No. 94630, 2011-Ohio-328.

**{¶25}** It is true that our earlier opinion in this case determined that the trial court erred by finding that it lacked jurisdiction to hear the replevin action because the funds had been forfeited to the federal government. We reached that decision by noting that "based on the record before this court, it is unclear whether the federal government now possesses the funds at issue." *Harris, supra*, at ¶ 11. With it being unclear whether the funds had been turned over to the federal government, the trial court did not plainly lack jurisdiction to hear a replevin action so the trial court's earlier dismissal of this case was done in error. By the time of trial, however, there was no doubt between the parties that the cash had been forfeited to the federal government. With the federal government in possession of the money, 18 U.S.C. 981(c) applied to bar the replevin action, especially when Ohio law specifically authorized the city to seek federal forfeiture.

**{¶26}** Finally, to the extent our earlier opinion in *Harris* questioned whether the police lawfully seized the money from Harris, that decision was not binding for two reasons. First, *Harris* was decided with two judges concurring in judgment only and one of those judges expressly agreed only that dismissal was improper given the lack of evidence of any forfeiture. *Id.* at ¶ 39-40. The lead opinion's statements questioning whether the seizure of the cash was lawful was therefore dicta. Second, to the extent the lawfulness of the seizure was at issue in the first appeal, that issue was settled when

Harris later conceded that the seizure was lawful. Our decision in *Harris* should be read only as holding that a state court dismissal of a replevin action for want of jurisdiction is justified when there is evidence that seized assets have been forfeited to the federal government.

{¶27} We therefore find that Harris presented no viable claim for seeking replevin against the city in this case. Once the court learned that the funds had been forfeited to the federal government, it should have granted the city's motion for summary judgment and not have allowed a trial on Harris's replevin action. The error in holding a trial was ultimately harmless, however, given that the jury found the funds were the fruit of illegal activity and presumably properly forfeited on that basis.

{¶28} Our holding necessarily moots consideration of Harris's claim that the court abused its discretion by refusing to allow him to attend trial, and the city's cross-assignments of error. *See* App.R. 12(A)(1)(c).

{¶29} Judgment affirmed.

It is ordered that appellees-cross-appellants recover of appellant-cross-appellee its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, ADMINISTRATIVE JUDGE

FRANK D. CELEBREZZE, JR., J., and
LARRY A. JONES, SR., J., CONCUR