[Cite as *Pope v. Abdullah*, 2025-Ohio-4845.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

TOMMIE POPE,                                          :

    Plaintiff-Appellant,         :

                                  No. 114756

    v.                                   :

AKEESHA ABDULLAH,                                     :

    Defendant-Appellee.          :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 23, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-976341

---

*Appearances:*

Samuel R. Smith, II, *for appellant*.

Akeesha Abdullah, *pro se*.

EILEEN T. GALLAGHER, J.:

{¶ 1} Appellant Tommie Pope ("Pope") appeals the judgment of the trial court finding in favor of appellee Akeesha Abdullah ("Abdullah") on his complaint for replevin. He assigns two errors for our review:

> 1. The trial court erred in not allowing Plaintiff-Appellant to present sufficient evidence which resulted in a judgment being rendered against Plaintiff-Appellant.

2. The judgment rendered against Plaintiff-Appellant is against the manifest weight of the evidence.

{¶ 2} After a thorough review of the applicable law and facts, we affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶ 3} This appeal arises from a replevin action seeking the return of a vehicle that Pope claims he purchased and rightfully owned and that Abdullah wrongfully possessed. Pope and Abdullah had previously been in a relationship for approximately one to two years. (Tr. 17.) In May 2020, Abdullah made a $500 deposit with a Ford dealership to order a 2021 Ford Mach-E Mustang ("vehicle"). (Abdullah trial exhibit No. 1.) In September 2021, during the time that Pope and Abdullah were still romantically involved, the vehicle was purchased with both Pope and Abdullah listed as purchasers on the purchase agreement ("Purchase Agreement"). (Pope's motion for order of replevin exhibit B.) Both parties signed the Purchase Agreement in the space labeled "Purchaser(s)." (*Id.*) However, the vehicle was titled solely in Abdullah's name. (Tr. 27; Abdullah trial exhibit No. 2.)

{¶ 4} At some point following the vehicle purchase, Pope and Abdullah had a falling out and Pope claimed that Abdullah had said that she was not going to make any more payments on the vehicle. (Tr. 25.) In March 2022, Pope contacted Ally Financial ("Ally"), the institution through which the vehicle had been financed, to inquire about transferring the vehicle into his name. He was told by a representative at Ally that if he paid off the lien, they would put the vehicle in his

name.  (Tr. 26.)  He obtained the payoff amount and paid the balance of the vehicle loan.  (Tr. 37.)

{¶ 5} Around this same time, Abdullah filed an incident report with the Garfield Heights Police Department where she alleged that Pope would not let her take the vehicle from his garage.  (Abdullah trial exhibit No. 3.)  According to the police report, Pope told police that he was the cosigner on the loan.  (*Id.*)  Police informed Pope that the vehicle was legally registered in Abdullah's name.  (*Id.*)  Abdullah was advised to contact the city's law department.  (*Id.*)

{¶ 6} In May 2022, Pope filed an application for an order to issue certificate of title in the Cuyahoga County Court of Common Pleas, pursuant to R.C. 4505.10.  *Pope v. Cuyahoga Cty. Fiscal Office Auto Title Div.*, Cuyahoga C.P. CV-22-964031.  In his application, he asked the court to issue an order titling the vehicle in his name.  In support of his application, Pope offered an affidavit where he explained that he had paid off the balance of the vehicle to Ally and that they had failed to title the vehicle in his name.  (Pope's motion for order of replevin exhibit C.)  The affidavit did not mention that Abdullah was a copurchaser or that she was currently listed as the title owner.  (*Id.*)  Abdullah maintained that she was not served or notified of the pending application; therefore, she did not object to the application and the court awarded title to Pope.

{¶ 7} In October 2022, Abdullah reported to police that the vehicle had been stolen from the driveway where she had been keeping it on and off.  (Abdullah's trial exhibit No. 3.)  An officer escorted Abdullah to Pope's residence and spoke with

Pope. (*Id.*) Pope advised the officer that the vehicle was not stolen, that he was in possession of it, and that there was pending civil litigation regarding the vehicle. (*Id.*) Abdullah was again advised to contact the city's law department. (*Id.*)

{¶ 8} In November 2022, the common pleas court entered an order granting Pope's application authorizing the issuance of title for the vehicle. Title was transferred into Pope's name in January 2023. (Pope's motion for order of replevin exhibit B.) On or near the day of the transfer, Pope and Abdullah went to a restaurant for dinner together. (Tr. 38.) He maintained that, at that time, Abdullah told him she was going to buy the vehicle from him. (*Id.*) He alleged that she drove the vehicle that night and was supposed to return it to him the next day but did not. (*Id.*) Pope's daughter, Shavonne Pope ("Shavonne") filed a police report against Abdullah on Pope's behalf, claiming that Abdullah had stolen the vehicle. (Abdullah's trial exhibit No. 6.)

{¶ 9} In March 2023, Pope filed the within matter, asserting a claim for replevin. He alleged that Abdullah had taken possession of his vehicle under the pretense of purchasing it from him, while knowing that she never intended to do so, and sought immediate possession of the vehicle. Attached to the complaint were documents that Pope claimed reflected his ownership of, and right to, the vehicle, including the certificate of title in his name and filings from the prior court case where Pope had obtained the court order to have the vehicle transferred into his name. He also attached a document from Ally notifying him of the amount required

to pay for the vehicle in full, along with a cashier's check made payable to Ally from Tommie's Construction for the full amount owed on the vehicle.[1]

{¶ 10} Contemporaneously with the complaint, Pope filed a motion for possession of personal property pursuant to R.C. 2737.03. Attached to the motion was Pope's "Affidavit of Replevin," wherein he stated that he owned the vehicle because he held "Ohio Certification of Title to the vehicle, which was issued on January 27, 2023." He further stated that Abdullah had taken possession of the vehicle on January 23, 2023, and had wrongfully kept it from him.

{¶ 11} The court held a hearing on the motion, where both parties appeared and presented evidence. The court ultimately denied the motion, finding that Pope had not met his burden of demonstrating probable cause and that Abdullah had presented evidence of title, which created a presumption of rightful possession. The court noted that factual issues and competing evidence as to proper title existed and ordered the matter to proceed on the complaint for replevin.

{¶ 12} Abdullah then filed an answer to the complaint, denying Pope's claims. The case proceeded, and Pope filed a "Motion for an Order of Replevin with Supporting Complaint for Replevin." The case was tried to the bench. Pope testified on his own behalf and also presented the testimony of Shavonne. Pope then rested.

---

[1] Pope is the owner of Tommie's Construction. (Tr. 14.)

{¶ 13} Abdullah did not present any witnesses but moved to admit her exhibits into evidence and rested. Pope's counsel made his closing argument. When he concluded, the court noted that he had not moved to admit his exhibits into evidence. Pope's counsel then moved accordingly, but the court denied his request because it was untimely since the case was already closed.

{¶ 14} At the conclusion of the trial, the court stated:

The Court has had the opportunity to review the case, to listen carefully to the testimony that's being provided, to review the documents that have been provided by both the defense and the plaintiff. Even though the plaintiff has not moved that his exhibits be moved into evidence, the Court has had the opportunity to review them for consideration.

The Court finds that there has [sic] been several things that have occurred here. The Court finds that consistent with Ohio Revised Code 4505.04 Subsection 2 that the case was originally titled — that the car was originally titled to Ms. Abdullah.

The Court finds that there have been several fraudulent maneuvers made, changing the title of the car being one. In the State of Ohio, you cannot change the title of a car without the signature of the previous owner.

The Court — the defendant has — the plaintiff has presented to the Court a request for a transfer of title which was never documented, it was never notarized, and it was never properly filed. It boggles the Court's mind as to how the title to this car was changed from Ms. Abdullah's name to Mr. Pope's name; however, after listening to the testimony it appears that Mr. Pope was able to pay $50,000 — $51,000 to a dealership and . . . to [Ally] Bank, and that they made a change in the title. That is not a proper change in a title in the State of Ohio. That is inconsistent with 4505.04 of the statute.

There are several occasions through the plaintiff's documentations that there were other efforts to change the title to this car. None of them are consistent with the law that's applicable in the State.

Now, there is not a cause of action for unjust enrichment because the testimony throughout the course of the trial seems to be that Mr. Pope and Ms. Abdullah dated and that there was an exchange of money and gifts. After the breakup there was a demand that the car be returned. Such things happen in life.

However, I think that Ms. Abdullah acknowledges that Mr. Pope made some payments on the car. She acknowledges that the car was paid off. She acknowledges that she still has possession of the car, and I think she indicated last week, Monday or something, that the car was in California. At any rate, there's been nothing sufficient.

Of concern to the Court is that apparently there was another action with another judge in this court where title actually was changed. Ms. Abdullah was not present. There have been some indications that she did not participate in that proceeding and that that was done by default.

I don't believe that it is the positioning of the Court to award fraud. There would have been a proper procedure for changing the title of this car and the changing of the title would require the signature of Ms. Abdullah for a transfer to Mr. Pope that did not happen.

As I indicated, there is some indication and testimony made present that there is some unjust enrichment because of the amount of money that was exchanged but there isn't any cause of action for that; therefore, the Court does rule in favor of Ms. Abdullah. The Court will indicate that the car should be properly titled in her name and that no other claims should be outstanding as a result.

{¶ 15} The trial court subsequently issued a judgment entry, finding in favor of Abdullah on Pope's claim and concluding that she was the rightful owner of the vehicle and entitled to possession and title. The court further found that Pope obtained title of the vehicle through fraudulent means and that he was not entitled to title or possession of the car under R.C. 4505.04. The court ordered title to be placed in Abdullah's name.

{¶ 16} Pope then filed the instant appeal.

## II. Law and Analysis

## A. Preclusion of Evidence

{¶ 17} In his first assignment of error, Pope argues that the trial court erred by not allowing him to present sufficient evidence, which resulted in a judgment being rendered against him. Specifically, Pope contends that the trial court improperly prevented him from submitting evidence that proved his cause of action and also wrongfully denied his motion to have the evidence admitted. Pope contends that it was "clearly obvious" that the trial court "purposely intentionally interrupted" Pope's counsel's closing argument so that he did not have the opportunity to ask for the evidence to be admitted. (Pope's brief p. 8.) Pope further asserts that the trial court went on to "perpetuate a fake narrative" that Pope's counsel "forgot to admit [his] evidence prior to closing and sought to have such evidence submitted after closing – all of which is simply untrue." (*Id.*)

{¶ 18} As noted above, after Shavonne testified, Pope's counsel stated that Pope had no further witnesses and said, "We rest." Abdullah then stated that she had no witnesses to call. The court informed her that she needed to move to have her exhibits entered into evidence. Abdullah so moved, and the court asked Pope's counsel if he had any objection. At that time, Pope's counsel stated that he did object and that he believed that the court was improperly instructing Abdullah, who was pro se, as to how to present her case. The court disagreed.

{¶ 19} The court then noted that both parties had rested and said it was moving to closing arguments. Pope's counsel presented his closing argument, at

the conclusion of which, the court informed him that he had never moved to admit Pope's exhibits into evidence. Pope's counsel maintained that he was "going to do that during [his] closing." (Tr. 83.)

{¶ 20} The court declined to reopen Pope's case for the admission of the exhibits. Pope's counsel asserted that the court had interrupted him before he could make such a motion, but that argument is belied by the record. Pope's counsel's closing argument concluded with him stating:

> Based on the case law which is also evidenced in the plaintiff's trial brief and evidenced in testimony, we feel that the plaintiff has met its burden here for granting of replevin. Thank you.

(Tr. 82.)

{¶ 21} It is clear, particularly from the final statement of "[t]hank you," that Pope's counsel had finished his closing argument and had not been interrupted by the court.

{¶ 22} Moreover, the trial court stated prior to rendering its decision that "[e]ven though the plaintiff has not moved that his exhibits be moved [sic] into evidence, the Court has had the opportunity to review them for consideration." (Tr. 84-85.) We note that Pope's exhibits that were not admitted were the same exhibits that had been attached to his original complaint and/or presented at the hearing on the motion for possession. Accordingly, the court had had the opportunity to review these exhibits on multiple occasions and heard testimony about them. The court's observations in its decision could just as easily have been derived from the testimony on the exhibits as from the exhibits themselves.

{¶ 23} We find that the court did not prevent Pope from presenting sufficient evidence in support of his case. Whether or not the exhibits were formally admitted, it is clear that the court reviewed and considered the exhibits and heard testimony about them. Pope's first assignment of error is overruled.

## B. Manifest Weight of the Evidence

{¶ 24} In his second assignment of error, Pope argues that the judgment rendered against him was against the manifest weight of the evidence. In support of this assignment of error, Pope argues that there was "considerable evidence and testimony that [Abdullah] had wrongful possession of the vehicle, was not the true owner of said vehicle, never purchased the vehicle[,] and subsequently failed to return said vehicle to [Pope] despite [Pope's] numerous requests . . . ." Pope further contends that he did not obtain the title through fraudulent means and disputes that the evidence he presented at trial was fraudulent.

{¶ 25} A replevin action is governed by R.C. Ch. 2737 and is essentially a claim of ownership in which a person with the right to immediate possession of property seeks to recover possession of that property. *Superior Piping Contrs., Inc. v. Reilly Industries, Inc.*, 2008-Ohio-4858, ¶ 37 (8th Dist.). "[T]here are two elements to a replevin action: '(1) that the plaintiff is the owner of the property in question and (2) that he is entitled to possession of the property in question.'" *Harris v. Mayfield Hts.*, 2013-Ohio-2464, ¶ 22 (8th Dist.), quoting *Brown v. Rowlen*, 1994 Ohio App. LEXIS 2174, *4 (5th Dist. May 12, 1994).

{¶ 26} "Appellate review of a trial court's judgment in a civil replevin action is for the manifest weight of the evidence." *Berry's Restaurant, Inc. v. Aisling, L.L.C.*, 2022-Ohio-1971, ¶ 131 (6th Dist.), citing *Lewis v. Coup*, 2010-Ohio-4386, ¶ 28 (6th Dist.). In a manifest-weight review, the appellate court considers

> "the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

*Mohammadpour v. Haghighi*, 2023-Ohio-4211, ¶ 20 (8th Dist.), quoting *John D. Smith Co., L.P.A. v. Lipsky*, 2020-Ohio-3985, ¶ 33 (2d Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 27} In the instant matter, Pope had the burden to persuade the trier of fact, by a preponderance of evidence, that he was entitled to immediate possession of the vehicle. "[I]n a replevin action the plaintiff must rely on the strength of his own title or right to immediate possession, and not on the weakness of the title or right of possession of the defendant." *Ohio Cas. Ins. Co. v. Guterman*, 97 Ohio App. 237, 238-239 (2d Dist. 1954), citing *Smith v. Barrick*, 151 Ohio St. 201 (1949).

{¶ 28} The evidence at trial demonstrated that Abdullah was the original title owner of the vehicle. There were no exhibits or testimony presented demonstrating that Abdullah had ever relinquished her title to the vehicle. In fact, Abdullah's trial exhibit No. 2 consisted of a (1) a certificate of registration for the vehicle, dated May 10, 2021, with only Abdullah listed in the field, "Owner Name"; (2) a duplicate certificate of title for the vehicle with an issue date of June 27, 2022,

listing only Abdullah under "Owner(s)"; (3) a vehicle renewal application, in Abdullah's name only, that would renew the vehicle registration by mail, with a new expiration date of January 26, 2023; and (4) a vehicle renewal application, in Abdullah's name only, that would renew the vehicle registration by mail, with a new expiration date of January 26, 2024.

{¶ 29} In January 2023, Pope obtained a court order issuing a certificate of title to the vehicle in his name. Certificates of title to automobiles are governed by R.C. Ch. 4505. R.C. 4505.04(B) provides that "no court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of . . . unless evidenced . . . [b]y a certificate of title . . . ." "[T]he provisions of R.C. 4505.04 were designed to protect title as between true and fraudulent title claimants and to create an instrument evidencing title to and ownership of motor vehicles." *State v. Shimits,* 10 Ohio St.3d 83, 85 (1984), citing *Hughes v. Al Green, Inc.,* 65 Ohio St.2d 110, 115 (1981). "When an individual offers into evidence the motor vehicle's certificate issued pursuant to the provisions of the Ohio Certificate of Title Act, no extrinsic evidence is admissible to dispute title and ownership except evidence to establish fraud or mistake." *Stacy v. Nickel*, 1985 Ohio App. LEXIS 7981, *6-7 (6th Dist. Jun. 7, 1985), citing *In re Case*, 161 Ohio St. 288 (1954).

{¶ 30} Here, we agree with the trial court that there was evidence to establish fraud on Pope's part when he sought the order for title to the vehicle in the prior court action. Pope testified in the instant matter that a representative of Ally told him that if he paid off the loan, the car could be titled in his name. Pope

had presented evidence in the prior case that he had obtained the payoff amount and subsequently submitted a payment in the full amount to Ally. However, that only resulted in Ally discharging its lien; title of the vehicle remained in Abdullah's name, which is why Pope sought to obtain a court order placing the vehicle in his name. Pope filed his application authorizing certificate of title to the vehicle via court order under R.C. 4505.10(A), which provides:

> In the event of the transfer of ownership of a motor vehicle by operation of law, as upon inheritance, devise, bequest, order in bankruptcy, insolvency, replevin, or execution sale, a motor vehicle is sold to satisfy storage or repair charges, or repossession is had upon default in performance of the terms of a security agreement as provided in Chapter 1309[ ] of the Revised Code and the secured party has notified the debtor as required by division (B) of section 1309.611 of the Revised Code, a clerk of a court of common pleas, upon the surrender of the prior certificate of title or the manufacturer's or importer's certificate, or, *when that is not possible, upon presentation of satisfactory proof to the clerk of ownership and rights of possession to the motor vehicle,* and upon payment of the fee prescribed in section 4505.09 of the Revised Code and presentation of an application for certificate of title, may issue to the applicant a certificate of title to the motor vehicle. Only an affidavit by the person or agent of the person to whom possession of the motor vehicle has passed, setting forth the facts entitling the person to the possession and ownership, together with a copy of the journal entry, court order, or instrument upon which the claim of possession and ownership is founded, is satisfactory proof of ownership and right of possession. *If the applicant cannot produce that proof of ownership, the applicant may apply directly to the registrar of motor vehicles and submit the evidence the applicant has, and the registrar, if the registrar finds the evidence sufficient, then may authorize a clerk to issue a certificate of title. If the registrar finds the evidence insufficient, the applicant may petition the court of common pleas for a court order ordering the clerk to issue a certificate of title.* The court shall grant or deny the petition based on the sufficiency of the evidence presented to the court. If, from the records in the office of the clerk involved, there appears to be any lien on the motor vehicle, the certificate of title shall

contain a statement of the lien unless the application is accompanied by proper evidence of its extinction.

(Emphasis added.)

{¶ 31} There was no evidence presented that Pope performed any of the above required steps; he simply went straight to seeking a court order. And the evidence presented to support Pope's application for an order authorizing certificate of title in the prior court action was questionable. First, the affidavit submitted with Pope's application for an order authorizing certificate of title was signed but not notarized and did not provide the court with the entire picture of the ownership of the vehicle. Pope only stated that he had fully paid the balance of the loan and that Ally had refused to transfer the title to the vehicle in his name. He made no mention of Abdullah and that the vehicle had been titled solely in her name. In addition, Pope utilized a form pertaining to an inspection for a vehicle that had been titled out of state; however, there was no evidence that the vehicle had ever been titled in any state other than Ohio.

{¶ 32} While Pope argues that he was the owner of the vehicle because his name had been placed on the title via a court order, for purposes of this replevin action, Pope failed to demonstrate that he was the proper owner or that he was entitled to possession of the vehicle. At trial, Pope acknowledged that he was a co-purchaser or cosigner on the purchase agreement for the vehicle, but he further admitted that the vehicle was titled in Abdullah's name alone at the time of purchase. (Tr. 21, 23, and 27.) While Pope may have presented proof of title to the

vehicle in support of his replevin claim, the trial court could not turn a blind eye to the questionable circumstances in the manner that Pope had secured the court order authorizing title to be placed in his name.

{¶ 33} Pope maintained that he had paid for the vehicle and that Abdullah had not provided any money toward it, but he also admitted that Abdullah had made payments on the vehicle. Abdullah does not dispute that Pope fully repaid the outstanding balance to Ally; however, this fact alone does not entitle him to title and possession of the vehicle. Again, the payoff of the loan simply discharged Ally's lien — it had no effect on the identity of the title owner of the vehicle. Pope may have conferred a benefit on Abdullah by paying the balance of the loan on her vehicle, but, as noted by the trial court, he has not asserted an unjust-enrichment claim in this matter.

{¶ 34} We find that there was competent credible evidence to support the trial court's decision that Pope did not demonstrate that he was entitled to possession of the vehicle and that Abdullah was the rightful owner. In a replevin action, the trial court will ultimately "award 'permanent possession of the property' to one party or the other in a 'final judgment' pursuant to R.C. 2737.14." *Ally Bank v. Bey*, 2020-Ohio-5093, ¶ 9 (10th Dist.). The court's denial of Pope's claim for replevin and award of permanent possession to Abdullah was not against the manifest weight of the evidence.

{¶ 35} Pope's second assignment of error is overruled. The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, P.J., and
DEENA R. CALABRESE, J., CONCUR