[Cite as *State v. Amos*, 2014-Ohio-3097.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 14-COA-01 |
| JOYCE AMOS | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Criminal appeal from the Ashland Municipal
Court, Case No. 13-CRB-01063

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    July 14, 2014

APPEARANCES:

For Plaintiff-Appellee

J. JEFFREY HOLLAND
1343 Sharon Copley Road
Box 345
Sharon Center, OH  44274

For Defendant-Appellant

O. JOSEPH MURRAY
10 East Main Street
Ashland, OH  44805

*Gwin, P.J.*

{¶1} Defendant-appellant Joyce Amos appeals her conviction and sentence on one count of abandoning animals after a bench trial in the Ashland Municipal Court.

### Facts and Procedural History

{¶2} Yvette Hyatt worked at the Claremont Veterinary Clinic in Ashland, Ohio. On July 2, 2013, after 8:30 p.m., Hyatt and her husband were driving by the Clinic after hours, when she noticed an unfamiliar car at the rear of the building, parked at an odd angle by the dumpster.

{¶3} Hyatt noticed Amos emerge from the area of the dumpster holding an empty, wire cage animal trap, referred to as a "live trap." A male individual was standing nearby, waving for Amos to come out. Amos put the trap in the trunk of the car, got in the driver's seat and drove away. Hyatt followed the car, with her husband driving. Hyatt was able to get close enough to record the license plate number, and called it in to the police.

{¶4} Hyatt returned to the Veterinary Clinic to look at the area where Amos had been parked. There, under the dumpster, she and her husband found a kitten with matted eyes that seemed unhealthy. The kitten approached her husband readily. Hyatt took the kitten home with her to try to nurse it back to health, and brought it to Dr. LaFever when the clinic re-opened at 8 a.m. the next day. The kitten was then placed with a foster home where it died shortly after arriving in the home. Ms. Hyatt confirmed two adult cats, which were clinic cats, were there at that time she saw Amos along with a calico kitten. The adult clinic cats had a doghouse with bedding to live in outside the

clinic. Hyatt and her husband were unable to capture the calico kitten and eventually gave up their attempt.

{¶5} Sergeant Cindy Benner of the Ashland County Sheriff's Department tracked down the license plate number of the vehicle and traced it to Amos. Sergeant Benner interviewed Amos. Amos is a seventy three year old widow on a small fixed income. Amos told the officer that she had first noticed the kitten "crying all day" under her porch. It also had diarrhea on Amos' blankets that were on the porch of her home. Amos attempted to lure the cat from under her porch with offers of food. Amos asked other individuals in the neighborhood if they knew where the animal belonged or if they would consider taking it. Amos related to the officer that an animal had died under her porch in the past and she had to suffer the expense of tearing up portions of the porch to retrieve the carcass due to the smell permeating throughout her home.

{¶6} Amos placed a cage on the porch and on July 2, 2013, the kitten got into the cage. Amos, who thought the kitten was going to die, decided that the only thing she could do for it was to take it to a vet. Amos drove a foreign student attending Ashland College, Jafar Ashaea from Saudi Arabia, to and from college each day. On July 2, she took Jafar to school and when it was time to pick him up, she decided to take the kitten into Ashland to the vet because Jafar could help her with the cage. When they arrived at the veterinarian office, it was closed. Not knowing what to do, she decided to leave the kitten with two outside adult cats and the kitten which she thought would lead the vet to discover the kitten. She knew if she took the kitten home, it would die.

{¶7} On September 17, 2013, Amos was charged with one of animal abandonment in violation of R.C. 959.01. A bench trial was held on December 11, 2013.

Amos was found guilty. Amos was fined $150.00 and required to pay restitution to the Claremont Veterinary Clinic in the amount of $170.50.

### Assignments of Error.

{¶8}   Amos raises two assignments of error,

{¶9}   "I. THE ASHLAND MUNICIPAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT THE STATE OF OHIO PROVED BEYOND A REASONABLE DOUBT THAT THE DEFENDANT WAS A "KEEPER" UNDER SECTION 959.01, REVISED CODE.

{¶10}  "II. THE ASHLAND MUNICIPAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT THE DEFENDANT, IF SHE WAS IN FACT A "KEEPER," DID NOT "ABANDON" THE ANIMAL UNDER SECTION 959.01, REVISED CODE."

### I. & II.

{¶11} Because we find the issues raised in the state's first and second assignments of error are closely related, for ease of discussion, we shall address the assignments of error together.

### Standard of Review

{¶12} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d

1239, 2010–Ohio–1017, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68.

{¶13} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 1990) at 1594.

{¶14} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983).

Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

\* \* \*

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

{¶15} *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

### *Analysis*

{¶16} Amos was convicted of abandoning animals. R.C. 959.01 provides,

No owner or keeper of a dog, cat, or other domestic animal, shall abandon such animal.

### A. "Keeper" of the animal.

{¶17} In the case at bar, a stray or feral kitten wanders upon the property of a 73-year-old widow. The animal damages items of Amos' personal property and its constant crying interferes with the use and quiet enjoyment of her home. In other words, Amos did not willing provide the animal with shelter, lure the animal onto her property or

attempt to prevent the animal from leaving her property. Each of these facts would differentiate Amos' conduct from the conduct of an individual that we would normally associate with being the "owner" or "keeper" of the animal.

{¶18} The kitten was emaciated, dehydrated, malnourished, had severe parasites and matted eyes. Obviously, the animal was no one's house pet and had either been abandoned by its human owner or born feral.

{¶19} Amos' only interaction with the animal was to lure it with food from underneath her porch, place it in a live trap and drop it off in the parking lot of the veterinary clinic, where it was admitted the veterinary shelter provided outside housing for two adult cats. (T. at 39). Further, a third cat was also hiding in the area of the dumpster. (Id.) An employee of the clinic admitted to being unable to the catch this third cat. (Id.)

{¶20} The evidence in the record overwhelmingly supports the fact that Amos did not want the animal and had no intention of ever assuming responsibility over it. Amos owed no legal duty to this abandoned or feral animal. Had she done nothing and simply allowed nature to take its course as it eventually did, she would not have a criminal conviction. However, once Amos captured the animal in a cage, she could not, for example, have tied a stone to the cage and dropped it a lake. Rather, she assumed the responsibility that she would treat the animal humanely. Thus, Amos could be found to be a "keeper" for purposes of R.C. 959.01.

## 2. Abandonment of the animal.

{¶21} Abandonment will not be presumed but requires affirmative proof of a person's intent to totally discard the property. *Kiser v. Board of Commrs.* 85 Ohio St.

129, 97 N.E. 52(1911). The conundrum in the case at bar centers on how we interpret the concept of abandonment under the circumstances of this case. On the one hand, Amos did not own the animal and clearly did not want the animal on her property. In that respect, she had nothing to abandon. On the other hand, Amos did capture the animal and release it in another location. In this respect, Amos did assume physical possession of the animal.

{¶22} It would seem resolution of this question in the case at bar must turn upon whether Amos' actions in releasing the animal were humane under the circumstances. Amos clearly did not simply ignore the animal and let it die where she had discovered it. However, Amos did not avail herself of methods of having the animal removed and its injuries treated. Although, Amos testified that she had asked her neighbors to care for the animal and had made several calls to various animal shelters in an attempt to seek help, we note that the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter,* 131 Ohio St.3d 67, 2011–Ohio–6524, 960 N.E.2d 955, ¶ 118. *Accord, Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed .2d 646 (1983).

{¶23} We note that Amos did not take any steps to make sure the animal would be found. She did not leave a note on the premises at the time she released the animal; nor did she call the veterinary clinic when it opened the next day to alert them to the fact the animal had been left in the parking lot.

{¶24} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Amos was the "keeper" of and had "abandoned" the animal. We hold, therefore, that the state met its burden of production regarding each element of the crime of abandoning animals and, accordingly, there was sufficient evidence to support Amos' conviction.

{¶25} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. No. CA–5758, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses. See, e.g., *In re Brown*, 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, citing *State v. DeHass*, 10 Ohio St .2d 230, 227 N.E.2d 212(1967).

**{¶26}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai,* 7th Dist. No. 07 MA 198, 2008–Ohio–6635, ¶ 31, quoting *State v. Woullard,* 158 Ohio App.3d 31, 2004–Ohio–3395, 813 N.E.2d 964, ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, citing *State v. Gore* (1999), 131 Ohio App.3d 197, 201, 722 N.E.2d 125.

### *Conclusion*

**{¶27}** Based upon the foregoing and the entire record in this matter, we find Amos' conviction was not against the sufficiency or the manifest weight of the evidence. To the contrary, the judge appears to have fairly and impartially decided the matters before him. The trial judge as a trier of fact can reach different conclusions concerning the credibility of the testimony of the witnesses. This court will not disturb the judge's finding so long as competent evidence was present to support it. *State v. Walke*r, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The judge heard the witnesses, evaluated the evidence, and was convinced of Amos' guilt.

**{¶28}** Amos' first and second assignments of error are overruled, and the judgment of the Ashland County Municipal Court is affirmed.

By Gwin, P.J.,

Farmer, J., and

Baldwin, J., concur