[Cite as *Graves v. Solorzano*, 2025-Ohio-4472.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CHRISIONNA GRAVES,                       :

    Plaintiff-Appellant,            :

                                      No. 114974

    v.                              :

JILLIAN SOLORZANO,                       :

    Defendant-Appellee.             :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 25, 2025

---

Civil Appeal from the Parma Municipal Court
Case No. CVH00033

---

### *Appearances:*

Chrisionna Graves, *pro se.*

Jillian Solorzano, *pro se.*

DEENA R. CALABRESE, J.:

{¶ 1} Plaintiff-appellant Chrisionna Graves ("Graves") appeals from the judgment entry of the Parma Municipal Court denying her motion for possession of property. Graves had filed a replevin action seeking the return of a cat from defendant-appellee Jillian Solorzano ("Solorzano"). For the reasons stated below, we affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 2} This appeal revolves around a dispute over the possession of an orange tabby cat named Marvin.

{¶ 3} On January 2, 2025, Graves filed a complaint for replevin and motion for possession of property in the Parma Municipal Court. On January 22, 2025, the trial court held a hearing on Graves's motion. Both Graves and Solorzano appeared pro se and testified at the hearing.

{¶ 4} The record reveals that Graves and Solorzano obtained Marvin in California on February 20, 2022, while they were in a romantic relationship. In June 2022, the couple moved from California to Ohio and began cohabitating. In April 2023, the romantic relationship ended, and on September 29, 2023, Solorzano moved out of the shared apartment without Marvin. From that point, Marvin went back and forth between homes until around November 2024 when Solorzano, who was in possession of Marvin at that time, blocked Graves's telephone number and refused her access to Marvin.

{¶ 5} Graves testified to the following at the replevin hearing: Marvin was given to both her and Solorzano. After Solorzano moved out, Marvin went back and forth between their homes but he was mostly with Graves. Graves believes she has paid for the bulk of Marvin's food and veterinary bills since Solorzano's move.

{¶ 6} Solorzano testified to the following at the replevin hearing: Marvin was acquired when he was gifted to her exclusively. She has pictures showing that even after she moved out, Marvin was in her care at least once a month. After she moved

out of the shared apartment, she continued to pay for Marvin's pet health insurance and some food and veterinary bills.

{¶ 7} The following was admitted into evidence at the hearing: Graves's statements from Apple Pay, Cash App, and her bank showing cat food and veterinary bill expenditures; an unsworn letter signed by Alyssa Everk, stating that Marvin was gifted exclusively to Solorzano; two one-year pet health-insurance policies for Marvin listing Solorzano as the owner, one policy effective beginning July 9, 2022, and a second policy effective beginning July 1, 2024; self-portrait photographs Solorzano took of herself and Marvin in December 2023 and January, March, May, June, July, September, and October 2024; a May 2, 2024 text message from Graves to Solorzano stating she wanted "the cats to be able to go back and forth" once Solorzano had her own apartment; an August 6 text message from Graves to Solorzano that states, "I think I'm fine with you just taking Marvin when you move,"[1] which led to several text messages before Solorzano responded they "could talk about him going back and forth even if he's living with [Solorzano]"; and an August 8 text message where Solorzano states that "Marvin is [Solorzano's] cat."

{¶ 8} On February 21, 2025, the trial court denied Graves's motion for possession, finding that prior to the end of their relationship, Graves and Solorzano intended to "enjoy [Marvin] equally." The trial court also found that when Solorzano moved out, she did not abandon Marvin because she continued to maintain a

---

[1] Some text messages between Graves and Solorzano that were admitted into evidence at the hearing show the month and day they were sent but not the year.

relationship with him and when he was in her care, she provided monetary support and other needs for Marvin. The trial court went on to find that Graves failed to show that she has a superior claim to Marvin.

{¶ 9} Graves raises the following assignments of error for our review:

1. The Municipal Court erred as a matter of law in holding that Graves did not meet the burden of proof to establish probable cause to support the claim, thereby denying the replevin action.

2. The Municipal Court erred in finding that the defendant if in fact was gifted the cat and thereby the owner, did not violate section 959.01, Revised Code in reference to abandonment of animals, despite the sufficiency and weight of the evidence.

## II. Law and Analysis

### A. Replevin

{¶ 10} In her first assignment of error, Graves argues that the trial court erred when it denied her motion for possession of property.

{¶ 11} The standard of review following a civil bench trial is whether the trial court's judgment is against the manifest weight of the evidence. *Gudenas v. Gudenas*, 2024-Ohio-3009, ¶ 39, citing *Revilo Tyluka, L.L.C. v. Simon Roofing & Sheet Metal Corp.*, 2011-Ohio-1922, ¶ 5 (8th Dist.), App.R. 12(C); *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77 (1984). "Judgments supported by some competent, credible evidence going to all the material elements of the claim must not be reversed as being against the manifest weight of the evidence." *Id.*, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.3d 223 (1994), syllabus. Under a manifest-weight-of-the-evidence review, "[r]eviewing courts must oblige every reasonable presumption in favor of the lower court's judgment and findings of fact."

*Gudenas* at ¶ 39, citing *Gerijo, Inc. v. Fairfield*, 70 Ohio St.3d 223, 226 (1994), *Seasons Coal Co., Inc.* at 80, fn. 3.

{¶ 12} On review, the appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed, and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 13} "A replevin action provides the means to obtain possession of specific personal property that one has a right to possess" and lies "against one having, at the time the suit is begun, actual or constructive possession and control of the property." *Lacy v. State*, 2020-Ohio-3089, ¶ 62 (11th Dist.). A cat is property, and its owner is entitled to maintain a replevin action for its wrongful taking. *Livengood v. Markusson*, 31 Ohio App. 183, 184 (9th Dist. 1928); *Dukuzumuremyi v. Martin*, 2025-Ohio-508, ¶ 25 (11th Dist.).

{¶ 14} The two elements to a replevin action are as follows: "'(1) that the plaintiff is the owner of the property in question and (2) that he is entitled to possession of the property in question.'" *Harris v. Mayfield Hts.*, 2013-Ohio-2464 (8th Dist.), quoting *Brown v. Rowlen*, 1994 Ohio App. LEXIS 2174 (5th Dist. May 12, 1994). The party filing a complaint in replevin has the burden to prove, by a preponderance of evidence, they are entitled to possession of the property. *Eltibi v. Kocsis*, 2021-Ohio-2911, ¶ 14 (9th Dist.).

{¶ 15} In this case, Graves failed to establish that she is the sole owner of Marvin and thus entitled to possession. The record reflects that Graves and Solorzano obtained Marvin while living together and both cared for him physically and financially in his early years. In the time since Solorzano moved out of the shared apartment, both Graves and Solorzano continued to care for Marvin physically and financially, although not in equal amounts. Even though Graves may have provided a greater amount of care than Solorzano provided, it does not negate any ownership interest Solorzano has to Marvin. We cannot say that the trial court erred when it found that Graves failed to show a superior claim to Marvin. Graves's first assignment of error is overruled.

## B. Abandonment

{¶ 16} In her second assignment of error, Graves argues that the trial court erred when it did not find that Solorzano abandoned Marvin pursuant to R.C. 959.01, leaving Graves as his sole owner.

{¶ 17} Graves urges us to adopt the R.C. 959.01 definition of "abandon." Pursuant to R.C. 959.01, "[n]o owner or keeper of a dog, cat, or other domestic animal, shall abandon such animal." However, a review of cases discussing R.C. 959.01 reveals its use exclusively in the context of criminal prosecution for abandonment of an animal where the owner left an animal with no intention of returning to it or plans for the care of the animal. *See State v. White*, 2024-Ohio-4654 (1st Dist.) (defendant convicted for abandoning animals under R.C. 959.01, because she admitted she left dogs at a home where she no longer resided, had not

returned to care for them, and the dogs had no food or water when they were found); *State v. Harding*, 2023-Ohio-3508 (2d Dist.) (defendant convicted of abandonment under R.C. 959.01 and failure to confine when she released a dog on the side of the road); *State v. Wolfe*, 2017-Ohio-1326 (5th Dist.) (defendant convicted of abandoning animals under R.C. 959.01 after an ill puppy was found in a plastic bag behind a store); *State v. Amos*, 2014-Ohio-3097 (5th Dist.) (defendant convicted of abandoning animals under R.C. 959.01 after leaving a cat outside a closed veterinarian's office).

{¶ 18} Graves specifically urges this court to adopt the definition of "abandon" as found in *White*. The appellant in *White* was convicted of abandoning animals under R.C. 959.01. The *White* Court adopted the *Black's Law Dictionary* of "'abandon'" as "'to leave (someone), especially when doing so amounts to an abdication of responsibility.'" (Cleaned up.) *Id.* at ¶ 25, quoting *Black's Law Dictionary* (11th Ed. 2019). The *White* Court also found that "[t]he intent of the owner or keeper of the animal is crucial to determining whether an animal has been abandoned." *Id.* at ¶ 29. The court looked to 1 Ohio Jur.3d, Abandoned, Lost, and Unclaimed Property, § 8 (2024), for whether an offender intended to abandon an animal, which states that "intent to abandon can be established by either 'unequivocal and decisive acts indicating such intention' or 'express declaration,' or may be 'inferred from circumstances indicative of intention.'" *Id.* at ¶ 30. As discussed above, the context of *White* and R.C. 959.01 is criminal convictions for

abandoning an animal; thus, we decline to apply the definition in a civil replevin action.

{¶ 19} In replevin actions, abandonment of an animal has been defined as

"'an absolute unequivocal relinquishment of a right or status without regard to self or any other person. It is a virtual throwing away without regard as to who may take over or carry on. It is a total desertion of what existed or went before; and evidence thereof must be direct, affirmative or reasonably beget the exclusive inference of throwing away.'"

*Long v. Noah's Lost Ark, Inc.*, 2004-Ohio-4155 (7th Dist.), quoting *Davis v. Suggs*, 10 Ohio App.3d 50, 52 (12th Dist. 1983), quoting *State ex rel. Reeder v. Mun. Civ. Serv. Comm.*, 1958 Ohio Misc. LEXIS 285, *31-32 (Franklin C.P. 1958).

{¶ 20} In this case, we must determine if the trial court erred when it found that Solorzano did not abandon Marvin when she moved out of the apartment she shared with Graves. A review of the record reflects that it supports the trial court's finding. Solorzano testified that she never intended to abandon Marvin, and her actions do not indicate abandonment. Both she and Graves testified that Marvin went back and forth between them after Solorzano moved out and that Solorzano visited Marvin. In addition, Solorzano continued to contribute financially to Marvin's care after she moved out of the shared apartment by purchasing food and paying for Marvin's health insurance, albeit her financial contribution was a lesser amount than Graves's contribution. Her continued care for Marvin also shows a lack of total desertion or virtual throwing away of Marvin. Graves fails to show that

Solorzano abandoned Marvin when she moved out of the shared apartment. In fact, the record reflects the opposite.

{¶ 21} Therefore, competent, credible evidence existed to support the trial court's finding that Solorzano did not abandon Marvin. Graves's second assignment of error is overruled.

{¶ 22} The trial court did not err when it denied Graves's motion for possession of property where she sought the return of Marvin the cat from Solorzano. For the reasons stated above, we affirm the trial court's order.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

MICHELLE J. SHEEHAN, P.J., and
EILEEN T. GALLAGHER, J., CONCUR